IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(ATLANTA)

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-66347 |
| AVERY KHALID A BEN EGYPT | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE BAISIER |
| _____ | ) | |
| ALTISOURCE RESIDENTIAL, LP | ) | |
| | ) | |
| Movant | ) | CONTESTED MATTER |
| v. | ) | |
| | ) | |
| AVERY KHALID A BEN EGYPT, Debtor | ) | |
| | ) | |
| KYLE A. COOPER, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

## ALTISOURCE RESIDENTIAL, LP'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW, ALTISOURCE RESIDENTIAL, LP (hereinafter, "Altisource" or, alternatively, "Movant"), a creditor and party in interest in the above-captioned case, by and through its undersigned counsel, and, pursuant to 11 U.S.C. § 362(d), moves the Court for an order lifting the automatic stay (hereinafter, the "Motion"), respectfully showing this honorable Court as follows:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties including, but not limited to, the right to proceed with a Dispossessory Action.

1

2.

AVERY KHALID A BEN EGYPT (hereinafter, "Debtor") filed a voluntary petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code on September 28, 2018, and are, therefore, subject to the jurisdiction of the Court.

3.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §§ 362 and 363 and 1301(c).

4.

Movant is a landlord/creditor pursuant to a Residential Lease Agreement dated October, 27, 2017 at a rate of $1,290.00 per month (hereinafter, the "Lease"). The Lease is executed by AVERY KHALID A BEN EGYPT, relative to certain property known as 2613 Brookgate Xing, Ellenwood, Clayton County, Georgia 30294 (hereinafter, the "Property"). A true and correct copy of the Lease is attached hereto as Exhibit "A" and incorporated herein by reference.

5.

Movant avers that, pursuant to the terms and conditions of the Lease, Debtor is currently in default under the terms of the Lease for non-payment of rent in the amount of $6,460.00. This amount includes a post-petition default of rent for October 2018.

6.

Movant further avers there is cause, including the lack of adequate protection, for granting Movant's Motion for Relief from Automatic Stay. Furthermore, the stay should be lifted as the Debtor do not have equity in the Property, and it is not necessary for an effective reorganization.

2

7.

Because the Lease so provides, the Debtor is responsible for Movant's reasonable attorney's fees. Upon belief, the filing of this Chapter 7 bankruptcy petition was done for the purpose of delaying a dispossessory action.

8.

Pursuant to 11 U.S.C. § 362(d), Movant is entitled to a termination of the automatic stay, with respect to its Property, since the lack of adequate protection exists.

9.

Movant requests that the provisions of Bankruptcy Rule 4001(a)(3) be waived and/or modified so as to allow Movant to proceed immediately with a dispossessory action in the Clayton County Magistrate Court.

WHEREFORE, Movant ALTISOURCE RESIDENTIAL, LP prays for the following relief:

(a)     That this Court grant Movant's Motion for Relief From Stay;

(b)     That the automatic stay pursuant to § 362(d) of the Bankruptcy Code be terminated, annulled, modified, and lifted to permit Movant to pursue all remedies available under Georgia law to recover possession of the Property and to allow Movant to apply any security deposit held by Movant to any post-petition amounts which came due under the terms of the Lease, and that the property be abandoned as property of the estate;

(c)     That the Court waive and/or modify Bankruptcy Rule 4001(a)(3) so as to allow Movant to proceed immediately with a dispossessory action;

(d)     That the Court award Movant its attorney's fees and costs in bringing of this Motion; and

3

(e)     For such other and further relief as this Court deems just and equitable.

Respectfully submitted, this 17th day of October, 2018.

THE GILROY FIRM                          /s/ Matthew F. Totten
3780 Mansell Road, Suite 140             MONICA K. GILROY
Alpharetta, Georgia 30022                (Georgia Bar No. 420527)
(678) 280-1922 (Telephone)               MATTHEW F. TOTTEN
(678) 280-1923 (Facsimile)               (Georgia Bar No. 798589)
Monica.Gilroy@gilroyfirm.com             ATTORNEYS FOR MOVANT
Matthew.Totten@gilroyfirm.com

4

## CERTIFICATE OF SERVICE

This is to certify that, in accordance with BLR 5005-5 (Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing ***MOTION FOR RELIEF FROM AUTOMATIC STAY*** in the above-captioned contested matter with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, and specifically, to counsel of record for the parties in interest in this matter:

E.L. Clark
Clark & Washington, LLC
Bldg. 3
3300 Northeast Expwy
Atlanta, GA 30341

Kyle A. Cooper
Chapter 7 Trustee
Greene & Cooper
120 Travertine Trail
Alpharetta, GA 30022

Further, a true copy of the foregoing ***Motion for Relief from Stay*** has been served upon the following Respondents by depositing a copy of the same in the United States mail, first class postage prepaid, addressed as follows:

AVERY KHALID A BEN EGYPT
2613 Brookgate Xing
Ellenwood, Georgia 30294

Dated:  October 17, 2018

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 (Telephone)
(678) 280-1923 (Facsimile)
Monica.Gilroy@gilroyfirm.com
Matthew.Totten@gilroyfirm.com

Respectfully submitted,
/s/ Matthew F. Totten
MONICA K. GILROY
(Georgia Bar No. 420527)
MATTHEW F. TOTTEN
(Georgia Bar No. 798589)
ATTORNEYS FOR MOVANT

5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(ATLANTA)

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 18-66347 |
| AVERY KHALID A BEN EGYPT | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE BAISIER |
| _____ | ) | |
| ALTISOURCE RESIDENTIAL, LP | ) | |
| | ) | |
| Movant | ) | CONTESTED MATTER |
| v. | ) | |
| | ) | |
| AVERY KHALID A BEN EGYPT, Debtor | ) | |
| | ) | |
| KYLE A. COOPER, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **Movant ALTISOURCE RESIDENTIAL, LP** has filed a **Motion for Relief from** and related **Stay** papers with the Court in the above-referenced matter, seeking an order lifting the automatic stay as to certain real property located at 2613 Brookgate Xing, Ellenwood, Clayton County, Georgia 30294.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion for Relief From Stay** in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303 at **1:30 P.M. (ET)** on **Monday, November 5, 2018.**

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta, Georgia. You must also mail a copy of your response to the undersigned at the address stated below.

6

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date.  Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:  October 17, 2018

THE GILROY FIRM

3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 (Telephone)
(678) 280-1923 (Facsimile)
Monica.Gilroy@gilroyfirm.com
Matthew.Totten@gilroyfirm.com

Respectfully submitted,
/s/ Matthew F. Totten
MONICA K. GILROY
(Georgia Bar No. 420527)
MATTHEW F. TOTTEN
(Georgia Bar No. 798589)
ATTORNEYS FOR MOVANT

7

## CERTIFICATE OF SERVICE

This is to certify that, in accordance with BLR 5005-5 (Bankr. N.D. Ga.), I have this date electronically filed the within and foregoing *Notice of Hearing* in the above-captioned contested matter with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, and specifically, to counsel of record for the parties in interest in this matter:

E.L. Clark
Clark & Washington, LLC
Bldg. 3
3300 Northeast Expwy
Atlanta, GA 30341

Kyle A. Cooper
Chapter 7 Trustee
Greene & Cooper
120 Travertine Trail
Alpharetta, GA 30022

Further, a true copy of the foregoing *Notice of Hearing* has been served upon the following Respondents by depositing a copy of the same in the United States mail, first class postage prepaid, addressed as follows:

AVERY KHALID A BEN EGYPT
2613 Brookgate Xing
Ellenwood, Georgia 30294

Dated: October 17, 2018

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 (Telephone)
(678) 280-1923 (Facsimile)
Monica.Gilroy@gilroyfirm.com
Matthew.Totten@gilroyfirm.com

Respectfully submitted,
/s/ Matthew F. Totten
MONICA K. GILROY
(Georgia Bar No. 420527)
MATTHEW F. TOTTEN
(Georgia Bar No. 798589)
ATTORNEYS FOR MOVANT

8

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C84



# REALHOME™
## Services and Solutions, Inc.

Property Address: ___2613 Brookgate Xing_____

Loan ID: __7623248_____

Dear __Avery Egypt_____    Charmyne Montfort,

This is a confirmation that you have completed all of your pre-move-in requirements and you are ready to move in. This is for information purposes only.

Thank you,

**REALHome Services and Solutions, Inc.**
www.RHSSrentals.com

-----------------------------------------------------------------------------------------------------

**AUTHORIZED PERSONNEL ONLY:**

I __Venus Olivia Sambajon_____ certify that the following requirements have been provided by the tenant and a move-in is allowed.

Lease start date:
1. A copy of valid Renter's Insurance.
2. A copy of the premises' utilities being transferred to the tenant's name (if applicable).
3. All payments due at move-in, including but not limited to: security deposit, pet fee (if applicable), last month's rent (if applicable) and first month rate.

-----------------------------------------------------------------------------------------------------

By: *DocuSigned by:* *Venus Olivia Sambajon*
C305A5EE6E97428...

Title: 6/20/2017

Date: 8/18/2017

REALHome Services and Solutions, Inc.
1000 Abernathy Road NE, Suite 200
Atlanta, GA 30328

rhssrentals.com | 855-662-8988


**EXHIBIT**
A

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

**ALTISOURCE RESIDENTIAL, L.P.**
**RESIDENTIAL LEASE AGREEMENT**

This RESIDENTIAL LEASE AGREEMENT (together with any addenda attached hereto shall be collectively referred to as "**Lease**"), is entered into by and between ___Avery Egypt___ ___Charmyne Montfort___ _____ ("**Tenant**"), and Altisource Residential, L.P., a Delaware limited partnership ("**Landlord**") for the Premises described below ("**Premises**") on the terms and conditions set forth in this Lease.

1.     **BASIC LEASE INFORMATION.** *This Lease, which includes the attached Addenda, sets forth all of the terms that govern the occupancy of the Premises. Please review it carefully. To assist you, Section 1 summarizes the Basic Lease Information contained in this document. Throughout this Lease, you will see captions similar to this caption. These are intended to assist you in understanding the terms and provisions of this Lease. If these captions conflict with any of the terms of this Lease, the terms of the Lease shall control. Any box not selected below, or in this document, shall <u>not</u> be a part of the Lease.*

1.1     <u>Date of Lease:</u>         ___10/27/2017___      *Date Parties enter into the Lease.*

1.2     <u>Landlord:</u>

    (a)     <u>Address for Landlord / Property Manager:</u>

Altisource Residential, L.P.
Attn: Leasing Operations Manager, Rental Property Management
P.O. Box 105460
Atlanta, GA 30348
Phone: 855-662-8988
Fax: 855-273-1048
Tenant Portal: http://www.rhsrentals.com/tenant-portal/
Email: CustomerService@rhss.com

    (b)     <u>Address for Legal Notice:</u>

C T Corporation System
Attn: Altisource Single Family, Inc.
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: 404-888-6488

    (c)     <u>Payments:</u>

Tenant shall use the "Automated Electronic Payments" method for paying Monthly Rent provided in **Section 7.3.**

**By initialing below, Tenant agrees to submit Rent or other payments as required by this Lease electronically via Automated Electronic Payments.**

Tenant(s) Initials

_aE_     _CM_     _____     _____

In the event that Tenant is unable to pay rent via the Automated Electronic Payments method, Tenant shall make monthly rental payments by delivering a money order or certified or cashier's check to the following address by the due date (cash or personal checks are not accepted):

REALHome Services and Solutions, Inc.
Attn: Leasing Operations Manager / Rental Property Management
P.O. Box 105460
Atlanta, GA 30348

Please remember to include your name and the property address on the money order or certified or cashier's check.

1.3     <u>Name(s) of Additional Occupants (if any):</u>     ___n/a___

1.4     <u>Premises Address:</u>     ___2613 Brookgate Xing___
    ___Ellenwood    GA    30294___

1.5     <u>Property Type:</u>

☒ Single-Family Home
☐ Attached Condominium
☐ Other _____

If the Premises is a Condominium unit within a building (and not a freestanding unit), any reference to the "**Building**" means the Building in which the Condominium is located.

Residential Lease Agreement (Georgia)      1      Tenant(s) Initials    _aE_    _CM_

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

**1.6**     **HOA Information:**     *If checked below, the Premises is located within a community with one or more homeowners associations ("HOA"). If so, Tenant and all Tenant Parties (see Section 2) will be required to comply with the terms of any covenants, conditions, and restrictions ("CC&Rs") and other rules and regulations of such HOA(s), in addition to complying with the terms of this Lease. You will need to review and comply with all such requirements as set forth in the Community Policies, Rules and Regulations Addendum. Any HOA restrictions and rules and regulations, and any Landlord's rules, shall be referred to collectively in this Lease as "Premises Rules."*

☐    Planned Community/Homeowners Association(s)
Name of Planned Community/Homeowners Association(s):
     n/a
     _____

**1.7**     **Lease Term:**     From the Commencement Date through the Expiration Date.

**1.8**     **Commencement Date:**     07/05/2017 _____

**1.9**     **Expiration Date:**     07/31/2018 _____

**1.10**     **Rent Information:**

     **(a)**    **Monthly Rent:**     $1,290.00 _____ .00 ("**Monthly Rent**").

          ☐    Monthly Rent shall increase to $_N/A_ , beginning with the _N/A_ month of the Lease Term, for the duration of the Lease.

     **(b)**    **Landscape Maintenance Fee:**     ☐    shall be paid by Tenant to Landlord in the amount of $_N/A_ per month as Additional Rent, along with the Monthly Rent.

     **(c)**    **Swimming Pool and Hot Tub Maintenance Fee:**     ☐    shall be paid by Tenant to Landlord in the amount of $_N/A_ per month as Additional Rent, along with the Monthly Rent.

     **(d)**    **Pet Rent:**     ☐    shall be paid by Tenant to Landlord in the amount of $_N/A_ per month as Additional Rent, along with the Monthly Rent.

     **(e)**    **Homeowners Association(s) Assessments:**     ☒    have been included in the Monthly Rent.

          ☐    shall be paid by Tenant to Landlord in the amount of $_N/A_ as Additional Rent, along with the Monthly Rent.

     **(f)**    **Other:** _____     ☐    has been included in the Monthly Rent.

          ☐    shall be paid by Tenant to Landlord in the amount of $_N/A_ as Additional Rent, along with the Monthly Rent.

**1.11**     **Security Deposit:**     $1,290.00 _____ .00 subject to increase as provided in **Section 9.1** below.

**1.12**     **Utilities:**

| Type | Paid by* | |
|------|---------|---|
| Gas | ☐ Landlord | ☒ Tenant |
| Electricity | ☐ Landlord | ☒ Tenant |
| Water | ☐ Landlord | ☒ Tenant |
| Sewer | ☐ Landlord | ☒ Tenant |
| Trash | ☐ Landlord | ☒ Tenant |
| Telephone | ☐ Landlord | ☒ Tenant |
| Cable | ☐ Landlord | ☒ Tenant |
| Internet | ☐ Landlord | ☒ Tenant |
| Other _____ | ☐ Landlord | ☒ Tenant |

*Subject to any allocations set forth in the Utilities Addendum

**1.13**     **Miscellaneous fees, charges and costs disclosed in other sections of the Lease:** *Throughout the Lease, certain provisions reference fees, charges and costs that Landlord may assess against Tenant. This section*

**Section 5.1:** The Lease Term shall become month-to-month and the Monthly Rent shall increase by $350.00 if, upon expiration of the initial Lease Term, the Lease Term has not otherwise been extended or renewed and Landlord accepts Monthly Rent (at the increased rate).

**Section 7.2.1:** Homeowners Association Charges and Charges for Municipal

Residential Lease Agreement (Georgia)

2

Tenant Initials _____ _____

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

*is a __noncumulative__ summary of these additional fees, charges and costs for informational purposes only. If this section conflicts with any of the terms of this Lease, the terms of the Lease shall control.*

Violations: $25.00.

**Section 7.7.1**: Late Charges for Non-Payment of Rent: $50.00

**Section 7.7.2**: Insufficient Funds Fee: $25.00.

**Section 7,7.3**: Property Transfer Fee: $250.00.

**Section 7,7.4**: Move In Rescheduling Fee: $50.00

**Section 12.8**: Service and Repair Charges: $75.00. The minimum charge for a service call and any related inspections and/or repair work.

**Section 16**: Entry and Inspection: For each occasion where the Tenant wrongfully denies Landlord's access to the Premises, Tenant agrees to pay Landlord the sum of $250.00 as damages for each such occasion, it being acknowledged that Landlord shall be damaged by the denial of access, that Landlord's actual damages are hard to estimate, and that the amount set forth above represents a reasonable pre-estimate of Landlord's damages rather than a penalty.

**Renters Insurance**: (i) **Section 20.1**: Tenant's renters insurance must provide liability coverage and should name Landlord as an additional insured (if available). Tenant's renters insurance must provide for coverage limits not less than $100,000 per occurrence and $100,000 in the aggregate and a deductible not more than $500.00. (ii) If there is a pool, then pursuant to **Section 12.4**, the limits are increased to not less than $500,000 per occurrence and $500,000 in the aggregate and a deductible not more than $500. (iii) If there is a dog, dog bite liability insurance may be required pursuant to **Section 20.2** and the Pet Addendum.

**Pets**: Pursuant to the Pet Addendum, Landlord may assess additional fees and costs.

2.    **LEASE OF PREMISES.** *A Lease is a binding contract between the Landlord and the Tenant. It gives each party certain rights and obligations. Before signing this Lease, you should be sure you understand your rights and obligations.* This Lease is entered into by and between Landlord and Tenant as of the date specified in **Section 1.8**. Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, the Premises as described in **Section 1**, subject to the terms and conditions contained in this Lease. All capitalized terms used in this Lease that are not otherwise defined shall have the meanings given to them in **Section 1**. All references to the "**Lease**" shall include this Lease and any addenda to this Lease ("**Addenda**") attached hereto and any subsequent written amendments entered into by Landlord and Tenant. All references in this Lease to "**Applicable Laws**" shall mean all applicable laws, ordinances, directives, temporary orders, and rules and regulations enacted now or hereinafter by any governmental authority with jurisdiction over the Premises and/or the Building, as applicable. All references in this Lease to "**Tenant Parties**" shall include the occupants listed in **Section 1.3** ("**Occupants**") and any guests or invitees of Tenant or Occupants.

3.    **AUTHORIZED AGENT.** Landlord may delegate or assign any or all rights and obligations under the provisions of this Lease to its authorized agent ("**Authorized Agent**"). The Authorized Agent shall be authorized to manage the Premises and to act on behalf of Landlord with respect to any provision or obligations of this Lease.

4.    **CONDITION OF PREMISES.** *This Section gives you the right to inspect the Premises prior to signing this Lease. It is important that you carefully inspect the Premises and identify any issues of concern on the Inventory and Premises Condition Form.* Tenant has inspected the Premises in accordance with the terms of this Lease and the attached Addenda, including any and all improvements, equipment, hardware, appliances, landscaping, fixtures, smoke detector(s) and carbon monoxide detector(s), if any, located in, on or about the Premises, and acknowledges that the Premises and all such items are clean, in good working order, and fit for use under the Lease, unless otherwise indicated in the attached Inventory and Premises Condition Form. In addition, Tenant has inspected the size and features of all rooms and any parking areas or garage in the Premises and approved them for Tenant's use under this Lease.

5.    **YEARLY LEASE TERM / MONTH-TO-MONTH LEASE.** *When you execute this Lease, you will be obligated to comply with all of the obligations and requirements throughout the entire Lease Term. You should carefully evaluate whether you are willing to lease and occupy the Premises for the entire Lease Term.*

   5.1    __Term of Lease__. The tenancy of this Lease shall be (check one):

   ☒    (If checked) __Yearly Lease Term__. The Lease Term shall begin on the Commencement Date and end on the Expiration Date at 5:00 p.m. Tenant shall vacate the Premises upon the expiration or earlier termination of this Lease, unless: (a) this Lease is extended or modified in accordance with all Applicable Laws, (b) Landlord and Tenant have extended this Lease in writing or signed a new lease agreement, or (c) the Lease Term becomes month-to-month pursuant to the following paragraph.

   The Lease Term shall become month-to-month and the Monthly Rent shall increase by **$350.00** if, upon expiration of the initial Lease Term, the Lease Term has not otherwise been extended or renewed and Landlord accepts Monthly Rent (at the increased rate). Tenant may remain in possession of the Premises and the tenancy will then be on a month-to-month basis at the increased Monthly Rent rate, and subject to all of the terms and conditions of this Lease until either party terminates the tenancy in accordance with this Lease and Applicable Laws. Landlord may further increase the Monthly Rent by giving Tenant written notice of such increase at least thirty (30) days prior to the commencement of the rental period for which the adjustment will apply. All adjustments and fees shall be made in accordance with Applicable Laws.



Residential Lease Agreement (Georgia)                                       3                          Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-480F-86B8-2456E6427C84

☐ (If checked) **Month-to-Month**. The Premises shall be leased as a month-to-month tenancy and the Lease Term shall be each calendar month. Landlord may increase the Monthly Rent by giving Tenant written notice of such increase at least thirty (30) days prior to the commencement of the rental period for which the adjustment will apply. All adjustments shall be made in accordance with Applicable Laws.

Tenant may terminate a month-to-month tenancy by giving written notice to the Landlord at least thirty (30) days prior to the end of the applicable rental period. Landlord may terminate a month-to-month tenancy by giving written notice to the Tenant at least sixty (60) days prior to the end of the applicable rental period. If terminated by Landlord or Tenant, such termination shall occur at 5:00 p.m. on the last day of the applicable rental period.

**5.2 No Release of Tenant Prior to Expiration Date**. Unless Tenant is entitled to terminate this Lease pursuant to Applicable Laws or the terms of this Lease, Tenant shall not be released from Tenant's obligations under this Lease for any reason.

**6. DELAYED POSSESSION**. If Landlord, for any reason, cannot deliver possession of the Premises to Tenant on the Commencement Date, Landlord shall not be liable for any damage caused by the delay, nor shall this Lease be void or voidable or the Lease Term be extended, but Tenant shall not be liable for the payment of Rent (as defined in **Section 7** of this Lease) until the date that Landlord delivers actual possession of the Premises. LANDLORD SHALL NOT BE NOT RESPONSIBLE FOR FINDING REPLACEMENT HOUSING FOR TENANT DUE TO A DELAY IN POSSESSION.

**7. RENT**. *You will be obligated to pay both a Monthly Rent and any other charges that may be incurred under this Lease. For example, if you or any Tenant Parties cause damage to the Premises and Landlord incurs costs in repairing the damage, you will be obligated to pay these costs and such costs are Additional Rent included in Rent. It is also important that you pay your Rent as and when required under this Lease to avoid late charges.* As used in this Lease, "**Rent**" shall mean the Monthly Rent and all other monetary obligations of Tenant to Landlord due under this Lease ("**Additional Rent**"). The Security Deposit is not Rent or Additional Rent and is governed under **Section 9** of this Lease.

**7.1 Payment of Monthly Rent**. The Monthly Rent in the amount specified in **Section 1** shall be due by the first (1st) day of each calendar month during the Lease Term and must be delivered, without deduction or set-off, as provided for in **Section 1.2(c)** and in **Section 7.3**. The Monthly Rent shall be subject to any increases as provided for in **Section 1.10** and/or **Section 7.2**.

**7.2 Payment of Additional Rent**. In addition to the Monthly Rent due, Tenant shall pay as Additional Rent, any other sums due under this Lease, all expenses which Landlord may suffer or incur by reason of any default of the provisions of this Lease, including, without limitation, the costs incurred in re-leasing the Premises, the cost of repairing damage to the Premises caused by the act of Tenant or any Tenant Parties, and all other charges permitted by this Lease and Applicable Laws. All charges due under this Section shall be deemed to constitute Additional Rent due and payable upon notice to the Tenant of the incurring thereof by Landlord. Tenant shall pay all Additional Rent within five (5) days after Landlord's delivery of notice for the Additional Rent. Notwithstanding the foregoing, all Additional Rent paid on a monthly recurring basis as provided in **Section 1** shall be paid on the same day as the Monthly Rent without notice from Landlord.

**7.2.1 Homeowners Association Charges and Charges for Municipal Violations**. Tenant shall be obligated to pay to Landlord, as Additional Rent, any charges levied against Landlord for the Premises during the Lease Term by any applicable homeowners association or governmental agency including, without limitation, any fines or other charges imposed by a homeowners association or governmental agency in enforcing its laws, codes, covenants, conditions, restrictions, rules, or regulations. In addition to the actual charge(s) levied for the violation, Tenant shall be obligated to pay to Landlord, as Additional Rent, an administrative fee of **$25.00** for each such charge levied. Landlord and Tenant hereby agree that such administrative fee represents a fair and reasonable estimate of the costs that Landlord will incur and shall not be construed as a penalty.

**7.3 Payment Procedures**. Unless specifically excepted pursuant to **Section 1.2.(c)**, Tenant shall pay Rent using "Automated Electronic Payments" transfer pursuant to the terms of this Lease and the terms of payment on the **Tenant Portal**. Automated Electronic Payments are paperless transactions that occur instantly and automatically without a check being processed through a local bank clearinghouse or the Federal Reserve System. Automated Electronic Payments include Automated Clearing House ("ACH") transactions. ACH refers to the nationwide network of banking institutions that have agreed to process electronic payments automatically from one bank account to another bank account.

If the Lease Term commences on a day other than the day Monthly Rent is due under this Lease, or ends on a day other than the day before Monthly Rent is next due, Monthly Rent shall be due for said partial month(s), prorated on the basis of a thirty (30) day month regardless of how many days are in the month. Rent payments will only be accepted from the Tenant unless otherwise accepted by Landlord in Landlord's sole discretion or as required by Applicable Laws. If Landlord agrees or is required by Applicable Laws to accept payment of Rent from a third party, acceptance of such payment shall not create a tenancy between Landlord and the third party.

**7.4 Application of Rent**. All sums received by Landlord from Tenant shall be applied to the oldest outstanding monetary obligation owed by Tenant to Landlord in Landlord's sole discretion.

**7.5 Failure to Pay First Month's Monthly Rent**. The first month's Monthly Rent together with all other amounts specified in **Section 1.10** shall be due as specified therein. In the event Tenant does not make all such payments when required, Tenant shall not have any right to occupy the Premises and Landlord may immediately terminate this Lease. In such case, Landlord may recover damages from Tenant, including, but not limited to, re-letting charges, attorneys' fees, court costs, and other lawful charges.

**7.6 Partial Payments of Rent**. Tenant shall pay Rent in full. Payment or receipt of a payment of less than the full amount shall be deemed to be nothing more than partial payment of that Rent. Under no circumstances shall Landlord's acceptance of a partial payment constitute accord or satisfaction or forfeit Landlord's right to collect the Rent balance due, despite any endorsement, stipulation, or other statement on Tenant's check or other form of payment. Landlord may accept any partial payment with any conditional endorsement without prejudice to the right to recover the balance remaining due, or to pursue any other remedy available to Landlord.



Residential Lease Agreement (Georgia)

4



Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

**7.7     Late Payments of Rent and Other Sums Due Under this Lease.**

**7.7.1     Late Charges for Non-Payment of Rent.**  Monthly Rent payments not received by Landlord by 5:00 p.m. on the fifth (5th) day of the calendar month will be considered delinquent.  All Additional Rent payments (not otherwise payable with Monthly Rent hereunder) not received by Landlord by 5:00 p.m. on the fifth (5th) day following the date Landlord delivers Tenant written notice of such Additional Rent payment due will be considered delinquent.  Tenant hereby acknowledges that the late payment by Tenant to Landlord of Rent and other sums due pursuant to this Lease will cause Landlord to incur unanticipated costs, the exact amount of which will be difficult to ascertain.  Such costs include, but are not limited to, processing and accounting charges and late charges which may be imposed on Landlord by the terms of any mortgage, encumbrance or note secured by the Premises.  Therefore, in the event Rent is delinquent, Tenant agrees to pay, as Additional Rent, by Automated Electronic Payment, money order, certified check or cashier's check only, a late charge of $50.00.  Landlord and Tenant hereby agree that such additional charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of Tenant's late payment and shall not be construed as a penalty.

**7.7.2     Insufficient Funds Fee.**  In addition to any late charge, Tenant also agrees to pay, as Additional Rent, by Automated Electronic Payment, money order, certified check or cashier's check only, $25.00, but not to exceed the maximum amount that may be charged pursuant to Applicable Laws, for each check or payment not honored by Tenant's bank, financial institution, or credit card issuer, and, unless prohibited by Applicable Laws, any processing fees or costs charged to Landlord by Landlord's or Tenant's bank, financial institution or credit card issuer.  Nothing in this Section shall limit the remedies available to Landlord as a payee of a dishonored payment.  If, during the Tenant's tenancy at the Premises, Tenant tenders two (2) Rent checks or payments which checks or payments are dishonored for any reason by Tenant's bank, financial institution, or credit card issuer, Landlord shall have the right to demand that all subsequent payments of Rents are tendered by money order, cashier's check or a certified check only.

**7.7.3     Property Transfer Fee.**  If during the term of the Lease Tenant requests and is granted the option to transfer to a property other than that which Tenant has a signed Lease and paid deposit, and the request is solely a preferential request, unrelated to any action or inaction of the Landlord, Tenant shall be required to pay a Property Transfer Fee of $250.00.  This fee must be paid prior Tenant's ability to transfer to a new property.

**7.7.4     Move In Rescheduling Fee.**  Prior to Tenant's occupancy of the Premises, Tenant and Landlord will perform a move in inspection of the Property to note any outstanding issues regarding the Premises.  Tenant and Landlord will coordinate the date and time of this move in inspection.  Once the move in inspection is scheduled, Tenant will be required to pay $50.00 each time the inspection is rescheduled at the request of Tenant.  The Move In Rescheduling Fee will be added to the subsequent month's rent.

**8.     PARKING AND STORAGE.**  If parking and/or storage is provided for the Premises, Tenant shall abide by the Parking and Storage Addendum (if any).  In addition, Tenant shall also abide by all Premises Rules.  Tenant shall not park vehicles on unpaved portions of the Premises.  All vehicles kept on the Premises must be operational and have current registration, tags, decals and license required by local and state laws.  Any vehicle not meeting these requirements will be removed at Tenant's expense after being given forty-eight (48) hour notification.  Vehicles must be parked only on paved or designated areas.  Tenant further understands that no repairing, servicing or painting of the vehicles is permitted on the Premises.

**9.     SECURITY DEPOSIT.**  *As a Tenant, you will be obligated to deliver a Security Deposit to Landlord.  To avoid Landlord deducting amounts from your Security Deposit, you will need to comply with the terms and provisions of this Lease during the Lease Term and must leave the Premises in a good condition as described in this Lease.*

**9.1     Amount and Application of Security Deposit.**  The amount set forth in **Section 1.11** as Security Deposit ("**Security Deposit**") has been deposited with Landlord as security for Tenant's payment and performance of the obligations under this Lease.  Subject to Applicable Laws, all or a portion of the Security Deposit may be used or retained by Landlord in the event Tenant shall fail or refuse to: (a) fully perform Tenant's duties imposed by Applicable Laws and, this Lease; (b) clean, repair, and restore the Premises and any appliances, fixtures, equipment and other property supplied by Landlord to its condition on the Commencement Date, except normal wear and tear; or (c) pay any Rent, late charges, dishonored check charges, utility charges or other charges which may be owed by Tenant pursuant to this Lease.  The retention of the Security Deposit shall not limit Landlord's right to proceed against Tenant for claims above the amount of the Security Deposit.  Upon Tenant's move-out, if a Tenant chooses to have the carpets cleaned, such cleaning must be performed by a third party professional carpet cleaning service reasonably acceptable to Landlord and receipt for such cleaning services must be provided to Landlord.  Unless the carpet is cleaned in the manner provided herein upon move-out, Landlord reserves the right to use a portion of the Security Deposit to professionally re-clean the carpets.  If the Monthly Rent is increased during the Lease Term, Landlord may request Tenant to increase the Security Deposit by the same amount as such increase.  Landlord may deduct from the Security Deposit, or any interest owed thereon, any fee imposed by Applicable Laws.  No portion of the Security Deposit may be applied by Tenant to the payment of the last month's Rent.

Pursuant to Official Code of Georgia Annotated §§ 44-7-31 & 44-7-32, or any successor statute or other Applicable Laws, Landlord shall (check one):

☒ Place the Security Deposit in an escrow account at Bank of America Merrill Lynch located at 2000 Clayton Rd., Concord, CA 94520.
☐ Furnish a bond in the amount of the Security Deposit from (bonding company) _____
located at (address) _____.

**9.2     Return of Security Deposit.**  The Security Deposit or any balance thereof, if any, shall be returned to Tenant within a month as required by Applicable Laws following the date on which complete surrender of possession of the Premises to Landlord has occurred or, if no such time period is required by Applicable Laws, within thirty (30) days after complete surrender of possession of the Premises to Landlord has occurred.  The date of such surrender shall be the date on which the keys to the Premises are given to Landlord and no person claims any continuing right to use and/or occupy the Premises.  Upon return of the Security Deposit or any balance thereof upon surrender, Landlord shall also provide to Tenant any statements or accounting, evidencing the amount of any deductions and the reasons for such deductions, as required by Applicable Laws.  Any balance of the Security Deposit shall be sent to the forwarding address provided by Tenant to Landlord or, if Tenant has not provided a forwarding address, to the Premises.  It shall be Tenant's sole responsibility to ensure that all mail that is delivered to the Premises for the Tenant after the Lease expires, including any balance of the Security Deposit, is forwarded to Tenant's new mailing address.  If Tenant is comprised of more than one (1) Tenant and if one (1) Tenant should vacate the Premises, Landlord shall not be required to return any portion of any balance of the Security Deposit to such vacating Tenant until all Tenants have vacated the Premises.



Residential Lease Agreement (Georgia)

5

Tenant(s) Initials  [DS]  AE  [DS]  CM

**9.3**   **Interest**.  Interest accrued, if any, on the Security Deposit shall not be payable to Tenant, unless required by Applicable Laws and, if Applicable Laws require interest to accrue on the Security Deposit for the benefit of Tenant, interest shall accrue in the minimum amount required by Applicable Laws and shall only be paid to Tenant at such time as the Security Deposit, if any, is refunded to Tenant.

**10.**   **OCCUPANCY AND USE**.  *When you executed this Lease, you identified in Section 1 yourself and the Additional Occupants that will occupy the Premises.  You will be responsible for the Additional Occupants and for any of your Tenant Parties.  You must also occupy and use the Premises for the purposes set forth in this Lease and the Premises Rules.*

**10.1**   **Permitted Use**.  Tenant shall not use or permit the Premises to be used for any purpose other than as the principal and primary residence of the Tenant and any Occupants.  No retail or commercial or professional use of the Premises shall be made unless Tenant has obtained the prior written consent of Landlord and such use conforms to Applicable Laws and the Premises Rules.  No use that requires employees, independent contractors, clients or customers coming to the Premises or the Building (if applicable) will be permitted.  In addition, home office use that unreasonably increases the use of electricity or adds to the number of telephone lines in the Premises or the Building is also prohibited.  Tenant shall promptly notify Landlord if Tenant no longer uses or occupies the Premises as Tenant's principal and primary residence.

**10.2**   **No Unlawful Purpose**.  Tenant shall not use or permit the Premises to be used for any unlawful purposes, in violation of any Applicable Laws, any Premises Rules or the Crime Free Premises Addendum, or in any manner which will constitute waste or nuisance upon or about the Premises.

**10.3**   **Tenants and Occupants**.  The Tenant may be occupied solely by the Tenants and the Additional Occupants, if any.  Any new Tenant or Occupant will require the prior written acceptance and approval of Landlord.  If an occupancy change is accepted and approved by Landlord during the Lease Term, a new lease or an amendment to this Lease shall be executed to memorialize such occupancy change as required by Landlord.  It shall be a violation of this Lease and cause for termination of this Lease for Tenant to permit any occupants to reside in the Premises other than the Tenant and Occupants.  Occupancy of guest(s) for more than seven (7) days is prohibited without Landlord's written consent and will be considered a breach of this Lease.  Any person occupying the Premises on a regular but not necessarily continuous basis for a period in excess of thirty (30) days shall be deemed to reside in the Premises.

**10.4**   **No Smoking**.  The Premises and the Building, as applicable, have been designated as "non-smoking."  The use of any tobacco, marijuana, or other smoke producing products in the Premises or the Building is strictly prohibited.  Tenant is responsible for payment of all costs and damages to the Premises due to smoking or smoke related damage caused by Tenant or Tenant Parties.  Any costs or damages Landlord incurs related to repairs, replacement, and cleaning due to Tenant's smoking or due to Tenant's violation of the no-smoking provisions of this Lease are in excess of normal wear and tear.  Smoke related damage, including but not limited to, the smell of smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the Premises is in excess of normal wear and tear.  Landlord has the right to terminate this Lease for any violation of the non-smoking policy.  Despite the termination of the Lease, Tenant will remain liable for Rent through the end of the Term or the date on which the Premises is re-let to a new tenant, whichever comes first.  Therefore, Tenant may be responsible for payment of Rent after Tenant vacates the Premises even though Tenant is no longer living in the Premises.  Tenant's responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this non-smoking policy are in addition to, and not in lieu of, Tenant's responsibility for any other damages or loss under the Lease.

**10.5**   **No Illegal Drugs or Narcotics**.  The Premises and the Building, as applicable, have been designated as "drug free."  The use of any illegal drugs or narcotics, including "medical marijuana" in the Premises or the Building is strictly prohibited.

**10.6**   **Uses that Increase Insurance Premiums**.  Tenant shall not do, or permit any act to be done, nor keep any personal property on or about the Premises, which may alter the conditions or assumptions underlying Landlord's insurance coverages or risk rating for the Premises, lead to any increase in Landlord's existing rate of insurance coverages upon the Premises or the Building, or otherwise violate any provision(s) of, or cause the cancellation of, any insurance coverages covering the Premises or the Building.

**10.7**   **Pets**.  Tenant shall not bring any dog, cat, bird, reptile, rodent, insect, pet, or any other animal onto the Premises at any time nor allow any Tenant Party to bring any such pet or animal onto the Premises without Landlord's prior written consent, which consent may be withheld in Landlord's sole and absolute discretion.  Landlord reserves the right to refuse authorization in its sole and absolute discretion, including the right to categorically prohibit all animals of a certain breed, size, or other factors.  In the event Landlord consents to a pet in the Premises, Tenant shall execute and abide by the Pet Addendum.  Tenant shall be liable for all claims and damages related to animals kept by Tenant, including, but not limited to, damages to the Premises and Landlord's property and the costs of restoring the Premises to its prior condition, excluding normal wear and tear.

**10.8**   **Service or Assistance Animals / Reasonable Accommodation or Modification**.  Notwithstanding the provisions of **Section 10.7**, service animals for the assistance of a Tenant or Tenant Parties with a disability for which a service animal is required shall be permitted upon Tenant's request, provided that Landlord may request documentation regarding the disability and the service animal, in compliance with Applicable Laws, and Tenant shall be liable for all claims and damages related to the service or assistance animal, including but not limited to damages to the Premises and Landlord's property and the costs of restoring the Premises to its prior condition, excluding normal wear and tear.  It is Landlord's policy not to discriminate against any person because of that person's disability or any other protected status.  Tenant can download the form entitled "Request for Reasonable Accommodation/Modification" and follow the instructions on that form to request Reasonable Accommodation or Modification of a rental unit: https://app.propertyware.com/pw/setup/mail_merge_images/304415369/REASONABLE_ACCOMMODATION.pdf

**10.9**   **Waterbeds and Liquid-filled Furniture**.  No waterbeds or other liquid-filled furniture shall be brought onto or used in the Premises.

**11.**   **UTILITIES**.  *As a Tenant, you will have certain obligations to pay utilities.  You should understand the utilities for which you must pay separately in addition to the Monthly Rent due under this Lease since utility fees will be additional costs that you will incur.*  Tenant shall arrange and pay for all utilities supplied to or consumed in, on or about the Premises including water, sewer, electricity, telephone, television, internet and garbage as provided in **Section 1.12**.  If any utilities are not separately metered or submetered Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord in an attached Utilities Addendum.  If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date.  Tenant shall provide Landlord with evidence of the transfer of all applicable utilities into Tenant's name prior to or on the Commencement Date.  Tenant's failure to provide such evidence shall be a default under this Lease, entitling Landlord to enforce all applicable remedies hereby, including, but not limited to, termination of this Lease.  Landlord shall also be entitled to have all utilities shut off and Tenant



Tenant's Initials

DE   Cm

shall not be allowed to occupy the Premises. Tenant shall obtain Landlord's prior written approval, which approval may be withheld in Landlord's sole and absolute discretion prior to adding any telephone, cable, or data lines to the Premises. Tenant shall cooperate with any conservation and recycling program adopted and implemented by Landlord, if any. Landlord does not represent or warrant that any utilities servicing the Premises will not be interrupted on account of repairs or alterations to the Premises, fire, other casualty acts of God, any labor controversy and other events beyond the control of Landlord. Any such interruption due to any such cause shall never be deemed to be an eviction of Tenant or a disturbance of Tenant's use or occupation of the Premises or render Landlord liable to Tenant for damages. Notwithstanding anything contained in this Lease to the contrary, Landlord does not represent or warrant the availability of telephone service, internet service, satellite or cable television service or any other service to the Premises, and no such services are guaranteed to be available to the Tenant. If Landlord pays for any utilities, said payments shall not include payment for any excessive use as reasonably determined by Landlord, and Tenant shall pay for any such excessive use as determined by Landlord pursuant to Applicable Laws. In addition, Tenant shall pay any and all costs for conversion from existing utilities service providers. Tenant shall also pay or reimburse Landlord, as Additional Rent, for any charges of any third party service provider retained by Landlord to monitor utility conversion or payments by Tenant.

**12.**   **MAINTENANCE.** *When you execute this Lease, you are obligating yourself to care for and maintain the Premises in accordance with the standards and requirements set forth below and all other maintenance provisions included in this Lease. Because you are responsible for the cost of repairing all damage caused to the Premises due to your failure to perform proper maintenance, it is very important that you understand your maintenance obligations. You should carefully review this Section and all other maintenance provisions of this Lease. You must contact Landlord to report damage to the Premises. You may be required to pay a fee for service calls you make to Landlord.*

**12.1**   **Tenant Maintenance Responsibilities**. Tenant shall at all times, use, operate and safeguard the Premises including any and all furnishings, improvements, equipment, hardware, appliances, landscaping, fixtures, and all mechanical, electrical, gas, and plumbing fixtures located in, on or about the Premises, and maintain, at Tenant's own expense, the same in a clean and sanitary condition and perform all other maintenance obligations imposed upon Tenant under this Lease. Tenant shall maintain the conditions existing at the Premises upon the Commencement Date. Tenant's maintenance obligations shall include without limitation:

(1) Following all maintenance recommendations of Landlord and any manufacturer recommendations for appliances, equipment, plumbing and other fixtures and furnishing;

(2) Keeping all drains clear and free of hair, obstructions and any foreign matter and repairing all clogged drains and toilets, except when the clog or obstruction is the result of roots or breakdown of fixture that is not caused by Tenant. Tenant shall be held responsible for the costs of cleaning and/or repair of any sewer or drains that become blocked or impeded by the negligence or willful conduct of the Tenant or Tenant Parties. Tenant agrees that they will not put in the sewer or drains the following items: feminine hygiene products (i.e. tampons, sanitary pads, etc.) condoms, disposable diapers, cleansing tissues, cigarette butts, grease, oil or any other item not intended for such disposal;

(3) Promptly removing any standing water, excess moisture or damp conditions at the Premises to prevent mold growth or other damage;

(4) Regularly cleaning all vents, filters, and fans located in the Premises (including the appliances and heating, ventilating and any cooling systems);

(5) Properly ventilating kitchen and bathroom(s);

(6) Promptly disposing of all garbage in appropriate receptacles;

(7) Supplying and changing heating and air conditioning filters at least once every three (3) months. If filters are not changed and it is determined that a necessary repair is needed because a filter was not changed, Tenant will be responsible for the repair costs;

(8) Supplying and replacing all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes and other devices (of the same type and quality that are in the Premises on the Commencement Date);

(9) Maintaining appropriate levels of necessary chemicals or matter in any water softener system, if applicable;

(10) Taking action to promptly eliminate any dangerous condition on the Premises;

(11) Maintaining all storm door(s) and screen door(s);

(12) Maintaining all internal and external ice makers and water dispensers;

(13) Replacing and/or repairing of window screens;

(14) Replacing and maintaining all shower rod(s);

(15) Repairing the Premises due to break-in or vandalism caused by Tenant or Tenant Parties' negligence or willful conduct;

(16) Winterizing the Premises – e.g., maintaining minimum levels of heat to prevent freezing of water pipes and outdoor spigots, wrapping of outside water main in winter, removal of snow accumulations, removal of ice in front of Premises, etc.;

(17) Repairing any lawn sprinkler heads and above ground irrigation, if applicable;

(18) Repairing or replacing mailboxes and paying for the community or group mailbox key(s);

(19) Replacing any lost or misplaced keys;

(20) Paying any periodic, preventative, or additional extermination costs, including but not limited to bed bugs, fleas, ticks, etc., desired by Tenant;

(21) Knowing the locations and operation of the main water cut-off/shut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;

(22) Cleaning silt, leaves or other deposits from downspouts and gutters, if any; and

(23) Otherwise employing proper maintenance activities at the Premises in accordance with the terms of this Lease to maintain the Premises in a good condition of maintenance and repair.

Tenant shall immediately report to Landlord, in writing, conditions posing any problem, failure, malfunction or damage at the Premises. All requests for repairs must be delivered to Landlord via the Tenant Portal at web url: http://www.rhsrentals.com/tenant-portal/ or the maintenance hotline. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair (unless the repair rises to a habitability issue). In the event of an emergency related to the condition of the Premises that materially affects the physical health or safety of an ordinary tenant, call 1-855-662-8988. If a repairperson, scheduled and paid for by Landlord, is unable to access the Premises after making arrangements with Tenant to complete the repair, Tenant shall pay any trip fee charged by the repairperson. Tenant shall not disable or tamper with any smoke detectors or carbon monoxide detectors installed in the Premises and shall maintain all such detectors in good working order and immediately report to Landlord in writing if any detector becomes inoperable or nonfunctional. Disconnecting or intentionally damaging a smoke/fire/carbon monoxide alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages. In addition, such tampering or negligence will subject Tenant to default under this Lease. Tenant shall take all reasonable and customary measures and shall comply with emergency and temporary directives from law enforcement, to protect the Premises and Tenant's personal property from damage from natural disasters (such as hurricanes, tornadoes, flooding, fires and freezing) and shall follow any evacuation orders. Landlord may, from time to time, provide Tenant with additional information or instructions regarding care of the Premises including during times of disasters and severe weather, and Tenant agrees to



Residential Lease Agreement (Georgia)

7



Tenant(s) Initials

comply with such information or instructions. Nothing set forth herein is intended to abrogate or waive any obligations of Landlord required by Applicable Law to repair conditions at the Premises.

**12.2** ☒ (If checked) **Landscaping; Outside Care.** ☐ *Landlord* ☒ *Tenant* shall maintain the garden, landscaping, trees and shrubs located on the Premises, and provide regular and routine landscape care including, but not limited to edging, irrigation, lawn fertilization, weed control, shrub and tree trimming, lawn mowing, removal of sticks and fallen branches, pine island rejuvenation, snow and ice removal, gutter cleaning, lawn over seeding, and leaf removal. All landscape debris shall be properly disposed of and shall not to be stored or composted on the Premises. Tenant agrees entrances, driveways, walks, lawns and other public areas shall not be obstructed or used for any purpose other than ingress and egress. If in Landlord's opinion, Tenant is deficient in these activities, Landlord reserves the right to either perform the service or hire the appropriate services both at Tenant's cost, which shall be considered an additional item of Rent. If Landlord is providing maintenance as provided in **Section 12**, Tenant shall pay for such services in the Additional Rent amount set forth in **Section 1** at the same time and manner as Monthly Rent.

**12.3** ☒ (If checked) **Watering.** In accordance with the Premises Rules and any standards established by Landlord, Tenant shall water on a regular and routine basis the garden, landscaping, as required, and all trees and shrubs located on the Premises. In performing such watering, Tenant shall observe all Applicable Laws pertaining thereto, such as times watering is permitted.

**12.4** ☐ (If checked) **Swimming Pool; Hot Tub.** At all times, Tenant shall observe all Premises Rules related to use of any swimming pool, hot tub, and/or any related equipment at the Premises and abide by the attached Premises Rules and Regulations Addendum. Tenant shall read and follow any instructions with respect to the pool, hot tub or related equipment. Tenant shall take all reasonable measures to keep all vents, drains, and filters clear from obstruction and debris. Tenant shall comply with any further instructions provided by Landlord from time to time. Tenant shall maintain the proper water level in the swimming pool and/or hot tub. Tenant shall maintain renters liability insurance, at Tenant's sole expense, including liability related to the pool and/or spa. Tenant's renters insurance must provide liability coverage, without exclusion of liability for the pool and/or spa, must name the Landlord as an additional insured and must provide for coverage limits not less than $500,000 per occurrence and $500,000 in the aggregate and a deductible not more than $500. Upon move-in, Tenant must provide to Landlord a certificate of Tenant's renters insurance showing coverage limits and deductible amount satisfactory to Landlord and providing for notice to Landlord at least thirty (30) days prior to cancellation or non-renewal. Tenant must deliver satisfactory replacement certificate of insurance to Landlord at least thirty (30) days prior to expiration of the insurance coverage previously in effect. If Tenant fails to deliver proof of insurance to Landlord upon move-in as described above, Landlord shall have the right, but not the obligation, to obtain the minimum renters insurance as required, in which event Tenant shall reimburse Landlord for such costs upon demand.

With respect to the routine maintenance of the pool and/or hot tub (check one):

☐ (If checked) Landlord shall perform routine maintenance of the swimming pool and/or hot tub. Tenant agrees to permit Landlord or Landlord's contracted pool service entry into the portion of the Premises where the pool or hot tub is located for purposes of such maintenance. The charges for such maintenance are set forth in **Section 1.10(c)**.

☐ (If checked) Tenant shall perform routine maintenance of the swimming pool and/or hot tub. Tenant shall maintain and keep in good repair and order the swimming pool, hot tub, and/or any related equipment located on the Premises, including, without limitation, cleaning and maintaining all filters, heaters, pumps and other mechanical equipment, and maintaining good water quality by routinely replacing any pool chemicals (e.g. chlorine tablets) and other water treatments.

**12.5** ☒ (If checked) **Pest Control.** ☐ *Landlord* ☒ *Tenant* shall provide for regular treatment of the Premises by a licensed pest control company for the extermination of insects, rodents or other infestation. If Tenant is responsible for contracting for any services in this **Section 12.5**, Tenant shall contract with a company acceptable to Landlord at Tenant's expense, for services at such intervals as may be required by Landlord and shall provide a copy of the applicable contract and times of service to Landlord upon request.

☐ (If checked) **Pest Control Disclosure Receipt.** Landlord hereby advises Tenant that Landlord has a contract with a pest control company for periodic treatment of the Premises with chemicals designed to destroy various pests. By placing his/her initials below, Tenant acknowledges receipt of a copy of the notice provided by the pest control company to Landlord that indicates the chemicals used and the frequency of the treatment pursuant to the contract.

Tenant(s) Initials: _____ _____ _____ _____

**12.6** ☐ (If checked) **Other.** Tenant shall also maintain the following _____.

**12.7** **Failure to Maintain.** Tenant shall be responsible for any costs incurred by Landlord in inspecting the Premises and making repairs required as a result of Tenant's failure to maintain the Premises as required under this Lease or as a result of damage caused by Tenant's or Tenant Parties use or activities on or about the Premises. Tenant shall also be responsible for any costs incurred in inspecting or repairing damage caused by Tenant's failure to report promptly needed repairs. Tenant shall be obligated to reimburse Landlord for all costs incurred by Landlord in performing such repairs as Additional Rent.

**12.8** **Service and Repair Charges.** Unless restricted under Applicable Laws, if Landlord is required because of the actions or inactions of Tenant or any Tenant Party, to inspect the Premises and/or perform repairs, Landlord shall have the right to charge for all costs of such inspection and repairs. The minimum charge for a service call and any related inspections and/or repair work is $75.00 (whether or not any inspections or repairs are required to be made). All such charges shall be payable as Additional Rent.



Residential Lease Agreement (Georgia)

8



Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

**12.9**      **Bed Bugs**.

**12.9.1      Acknowledgement**. Tenant hereby acknowledges and agrees that Landlord has informed Tenant that the Premises have had no reported instances of bed bug infestation preceding the execution of the Lease or alternatively, Landlord has had the Premises treated by a licensed pest control company, at the conclusion of which, the Premises were found to be free of bed bugs.

**12.9.2      Prior Residence**. Tenant hereby warrants and certifies that Tenant is not moving from, and has not lived in, a property, residence, and/or apartment that has experienced or been subject to a bed bug infestation within the eighteen (18) month period immediately preceding the Commencement Date. Prior to taking possession of the Premises, Tenant has inspected Tenant's personal property, furniture, mattress, clothing and possessions and found them free of bed bugs. Tenant further certifies and warrants that he/she has not been subjected to conditions in which there was a bed bug infestation prior to taking possession of the Premises.

**12.9.3      Responsibilities and Delivery of Possession**. Tenant agrees that any infestation of bed bugs in the Premises shall constitute damage and defacement of the Premises. In consideration of the disclosure provided for herein, if the Premises becomes, or is dis covered to be, infested with bed bugs at any time during the Term or any renewal thereof, or between Tenant's move-out and Landlord's possession of the Premises, such infestation shall be conclusively presumed to be caused by Tenant; and in such an event, Tenant agrees that it shall be responsible for any damages incurred by Landlord as a result of such infestation including, but not limited to, the cost of treatment for the Premises as recommended by a qualified and licensed pest control company. Furthermore, Landlord may declare a Default of the Lease and pursue any and all remedies available to Landlord under this Lease.

**13.      ALTERATIONS**.  *Since you are leasing the Premises for a limited period of time, Landlord must approve any alterations which you make to the Premises.  You should understand that Landlord may not always approve of your alterations.*  In conjunction with the duties and obligations of the Tenant under this Lease, including without limitation the maintenance provisions of **Section 12** and all Addenda, Tenant is prohibited from taking actions that will alter or impact the Premises, or cause changes to the evaluation or inspection of the Premises, Building or conditions therein (collectively referred to as **"Alterations"**), without first obtaining the written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion.  Such Alterations include but are not limited to, the following activities: sanding, scraping, cutting, removing, heating, demolishing, repairing, renovating, painting, finishing, coating, replacing, modifying, sampling, testing, analyzing or evaluating any interior or exterior building materials at the Premises or the conditions at, in, under and within the Premises or Building.  Prior to commencing any Alterations, Tenant shall provide Landlord with thirty (30) days' notice to allow Landlord to post any notices of non-responsibility or such other notices permitted by Applicable Laws.  At Landlord's sole and absolute discretion, any such permitted Alteration(s) of the Premises shall be removed by Tenant at Tenant's sole cost and expense and the Premises restored to original condition prior to the end of the tenancy unless Landlord gives Tenant written notice, which notice may be given at the time of any walk through of the Premises prior to the end of the tenancy, that all or any designated portion of said Alteration(s) shall remain in the Premises in which event Tenant shall not remove the Alteration(s).  In addition, Tenant shall not install any fixtures in the exterior of the Premises (including above-ground pools), display any signs or exterior lights on the Premises (except temporary seasonal decorations), and no awnings or other projections shall be attached to the outside of the Premises without first obtaining the written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion.  Tenants and Occupants with disabilities, as defined by Applicable Laws, may make requests for reasonable accommodations and modifications from Landlord.  Tenant shall not allow or cause any mechanic's and material supplier's liens, or any similar liens or encumbrances to be recorded against the Premises and/or the Building.  Tenant shall indemnify, protect, defend and hold Landlord Parties (as defined below) harmless from and against any and all Claims in connection with any such mechanic's and material supplier's liens, or any similar liens or encumbrances recorded against the Premises.  As used in this Lease, **"Landlord Parties"** shall mean Landlord and all of its members, partners, shareholders, managers, officers, principals, investors, affiliates, employees, agents, representatives, successors and assigns, and **"Claims"** shall mean any and all suits, actions, causes of actions, damages, demands, claims, liabilities, judgments, fines, penalties and costs, and fees and expenses including without limitation attorney's fees, costs and cost of enforcement for the subject matter therein.

**14.      KEYS; GARAGE DOOR OPENERS; LOCKS**.  *You will be given certain keys, openers and other access devices.  You will be responsible for these keys and other devices and there may be a charge if you lose these keys or devices.*  Tenant has received or will receive, prior to the Commencement Date, keys, remote control devices and any other access devices for the Premises and related areas.  Tenant shall not re-key any existing locks or change any existing opening devices without Landlord's prior written consent, which consent may be withheld in Landlord's sole and absolute discretion.  If Landlord consents to changes to any existing opening devices, Tenant shall immediately deliver copies of all new keys and opening devices to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant, without Landlord's prior written consent, which consent may be withheld in Landlord's sole and absolute discretion.  Upon Tenant vacating the Premises, Tenant shall be responsible for the cost Landlord incurs for re-keying or replacing any locks for which all keys are not returned and/or to replace locks that the Tenant changed.  All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing.  Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.  Tenant further understands and acknowledges that although Landlord makes every effort to make the Premises safe and secure, this in no way creates a promise of security. If the Premises are broken into, Landlord will not be responsible for any stolen items.  Tenant acknowledges that: (1) crime can occur in any neighborhood including the neighborhood in which the Premises is located; and (2) while Landlord may from time to time do things to make the Premises reasonably safe, Landlord is not a provider or guarantor of security in or around the Premises. Tenant acknowledges that prior to occupying Premises, Tenant carefully inspected all windows and doors (including the locks for the same) and all exterior lighting and found these items: (a) to be in good working order and repair; and (b) reasonably safe for Tenant and Tenant's Parties.

**15.      DAMAGE TO PREMISES**.  *While no one ever expects an unforeseen casualty, such an event can occur and may impact your occupancy.  This Section and Section 15.1 address what happens in the unlikely event that there is damage, destruction, or a condemnation.*  If, by no fault of Tenant, the Premises or Building has been totally or partially damaged or destroyed by fire, earthquake, flood, accident or other casualty that renders the Premises substantially uninhabitable, as determined by Landlord subject to Applicable Laws, either Landlord or Tenant may terminate this Lease by giving the other written notice within fourteen (14) days of the event causing such damage.  If the Lease is not terminated, Monthly Rent shall be abated as of the date the Premises become totally or partially uninhabitable. The abated amount shall be the current Monthly Rent prorated on a thirty-day period. In addition, if this Lease is not terminated, Landlord shall promptly repair the damage, and Monthly Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damages are caused by Tenant or any Tenant Party, Tenant shall be responsible for all costs and expenses of repairing such damages and no reduction in the Rent shall be made.  At any time during the tenancy Landlord may send Tenant notice of the amount of any such expense incurred and, within five (5) days after delivery of such notice, Tenant shall pay the full amount demanded by Landlord as Additional Rent.  Subject to Applicable Laws, if Tenant damages or causes damage to the Premises to the extent that the Premises is not habitable, only Landlord shall have the right of termination.



Residential Lease Agreement (Georgia)

9



Tenant(s) Initials

DocuSign Envelope ID: B3CC9A2B-30A7-460F-8688-2466E6427C94

15.1    **Condemnation.**  If any portion of the Premises is taken by any public authority by eminent domain, this Lease shall terminate effective as of the date of such taking.  Tenant hereby assigns to Landlord all condemnation awards of any nature arising out of or relating to Tenant's interest created by this Lease.

16.    **ENTRY AND INSPECTION.**  *During the Lease Term, Landlord will have certain rights to enter in the Premises to perform inspections, repairs and to even show the Premises to other prospective Tenants and other parties.  It is important that you cooperate with Landlord with such entry. If you fail to do so, you may be liable for certain costs and other damages.*  Tenant shall permit Landlord or any agent or contractor of Landlord to enter the Premises to inspect the Premises, make necessary or agreed decorations, repairs (including installing, repairing, testing, and maintaining smoke detectors and carbon monoxide devices, and bracing, anchoring or strapping water heaters), alterations, or improvements, or to supply necessary or agreed services, or to show the Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors, at reasonable times and upon reasonable notice, normally twenty-four (24) hours, but no such notice shall be required in the event of an emergency.  Said notice may be slipped under or attached to the front door to the Premises or provided through the Tenant Portal.  Tenant shall allow access to pest control personnel on reasonable notice and will carry out any preparations that are requested prior to any such visit.  In addition, Tenant agrees that Landlord may enter, at all reasonable times with reasonable notice, to inspect the Premises for reasonable business purposes in accordance with Applicable Laws.  Tenant acknowledges that Landlord may have a key to the Premises and may use such key for entry, subject to Applicable Laws.  Tenant agrees to compensate Landlord for any damage to the Premises or for locksmith expenses should entry by Landlord be obstructed because Tenant has changed a lock or added an additional lock.  Landlord is permitted to make all alterations, repairs and maintenance that in Landlord's judgment are necessary.  No notice is required: (a) to enter in case of an emergency when immediate action is necessary in the opinion of Landlord or Landlord's agent for the protection of the Tenant or the Premises; (b) if the Tenant is present in the Premises and consents at the time of entry; or (c) if the Tenant has abandoned or surrendered the Premises.  If the work performed requires that Tenant temporarily vacate the Premises, then Tenant shall vacate for this temporary period upon being delivered reasonable notice by Landlord.  Tenant agrees that in the event Tenant is required to temporarily vacate the Premises, Tenant's sole remedy and compensation shall be a corresponding reduction in Monthly Rent for those many days that Tenant was temporarily displaced.  For each occasion where the Tenant wrongfully denies Landlord's access to the Premises, Tenant agrees to pay Landlord the sum of $250.00 as damages for each such occasion, it being acknowledged that Landlord shall be damaged by the denial of access, that Landlord's actual damages are hard to estimate, and that the amount set forth above represents a reasonable pre-estimate of Landlord's damages rather than a penalty.  Any wrongful denial of entry by Tenant shall be deemed a default under **Section 23** and shall give rise to Landlord's remedies under **Section 24.**  For purposes of this **Section 16**, an emergency includes a situation where, for practical necessity, repairs or maintenance elsewhere in the Building, if applicable, or due to events outside the Premises, such as natural disasters, unexpectedly require immediate access to the Premises, to assess the need for, or complete repairs.  In the event of any emergency entry by Landlord, Landlord shall provide Tenant with written notice of such entry as soon as reasonable under the circumstances after entry.

16.1    **Lockbox.**  Tenant authorizes the use of a key safe/lockbox to allow entry into the Premises and agrees to sign a key safe/lockbox Addendum, if required by Landlord.

17.    **ASSIGNMENT AND SUBLETTING.**  *Landlord is leasing the Premises to you.  There are therefore restrictions on your ability to assign or sublet the Premises and Landlord may withhold consent to any such assignment or subletting.*  Tenant may not assign this Lease voluntarily or involuntarily nor sublet the whole or any portion of the Premises without the prior written consent of Landlord.  The failure to obtain such consent prior to having any person move into the Premises shall be deemed a material breach of this Lease.  Any action or inaction or acceptance of any Rent or knowledge on the part of Landlord of the presence of a person not the Tenant shall not be deemed to be a waiver of the requirement that Landlord's prior written consent must be obtained nor constitute a consent of any person as a "sub-tenant", approved occupant or new tenant.  Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Tenant to amend this Lease.  Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease and does not release Tenant of Tenant's obligations under this Lease.

18.    **LIMITED LIABILITY OF LANDLORD.**  *There are some limitations on your ability to bring an action against Landlord that are described in this Section. Some of these limitations are subject, however, to Applicable Laws.*  Tenant for himself/herself and on behalf of all Tenant Parties, agrees that Landlord shall not be liable for any injury or harm to any person or property caused by a defective condition of the Premises and Building to the greatest extent permitted by Applicable Laws.  Further, Tenant agrees for himself/herself and on behalf of the Tenant Parties and their personal representatives, heirs, executors, administrators, agents and assigns, to release and discharge Landlord Parties from any and all claims (known or unknown) arising out of the Tenant's or the Tenant Parties' acts or omissions in or on, or use of the Premises and/or the planned community or the Building in which the Premises is a part.

TENANT ACKNOWLEDGES THAT TENANT HAS CAREFULLY READ THIS WAIVER AND RELEASE AND FULLY UNDERSTANDS THAT IT IS A RELEASE OF LIABILITY TO THE MAXIMUM EXTENT ALLOWED UNDER APPLICABLE LAWS. TENANT IS WAIVING ANY RIGHT THAT TENANT OR TENANT PARTIES MAY HAVE TO BRING A LEGAL ACTION TO ASSERT A CLAIM AGAINST LANDLORD PARTIES, FOR TENANT'S AND/OR SUCH TENANT PARTIES' OR THEIR RESPECTIVE PERSONAL REPRESENTATIVES, HEIRS, EXECUTORS, ADMINISTRATORS, EMPLOYEES OR ASSIGNS ACTS OR OMISSIONS IN OR ON, OR USE OF THE PREMISES OR THE PROPERTY OF WHICH THE PREMISES IS A PART.

19.    **INDEMNIFICATION.**  In accordance with this Lease, Tenant shall indemnify, protect, defend and hold Landlord and the Landlord Parties harmless from any and all Claims associated with any injury or harm to any person or property occurring on or about the Premises and Building, as applicable, including but not limited to any breach by Tenant of the Lease and/or any damage or liability caused by Tenant or any Tenant Party during the Lease Term, except to the extent that the injury or harm is caused by the gross negligence or willful misconduct on the part of Landlord.

20.    **INSURANCE.**  *You are required to obtain insurance and provide evidence of such insurance to Landlord upon Landlord's request.*  Tenant is advised that the personal property and vehicles of Tenant and any Tenant Parties, and any other liabilities Tenant may sustain under this Lease, are not insured by Landlord against loss or damage.  Tenant is required to carry Tenant's own insurance to protect Tenant from any such loss or damage.  Tenant shall comply with any requirement imposed by Landlord's insurer to avoid: (a) any increase in Landlord's insurance premium, or (b) loss of insurance.  Tenant further acknowledges and agrees that Tenant shall bear the risk of loss of any and all of Tenant's personal property whether located in the Premises, the Building, garage/carport, designated storage areas or any surrounding areas.  Tenant agrees not to hold Landlord, his/her agents and/or employees liable in any manner for or on account of any loss or damages sustained by reason of the acts or omissions of third parties, or arising from any casualty (including but not limited to fire, theft, explosion, winds, earthquake, flood and/or water damage).



Residential Lease Agreement (Georgia)

10

Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C84

**20.1    Renters Insurance.** Tenant is required, at Tenant's expense, to purchase and maintain a liability insurance policy to protect and insure against bodily injury and damages to the Premises. Tenant shall be responsible for any loss in excess of Tenant's insurance coverage. Landlord may provide you with information of an insurance program that Landlord makes available to Tenants, which provides Tenant with an opportunity to buy renter's insurance from a preferred company. However, Tenant is free to contract for the required insurance with a provider of Tenant's choosing.

Tenant's renters insurance must provide liability coverage and should name Landlord as an additional insured (if available). Tenant's renters insurance must provide for coverage limits not less than $100,000 per occurrence and $100,000 in the aggregate and a deductible not more than $500.00. Upon move-in, Tenant must provide to Landlord a certificate of Tenant's renters insurance showing coverage limits and deductible amount satisfactory to Landlord and providing for notice to Landlord at least thirty (30) days prior to cancellation or non-renewal. Tenant must deliver a satisfactory replacement certificate of insurance to Landlord at least thirty (30) days prior to expiration or non-renewal of insurance coverage previously in effect. If Tenant fails to deliver proof of insurance to Landlord upon move-in as described above, Landlord shall have the right, but not the obligation, to obtain the minimum renters insurance as required, in which event Tenant shall reimburse Landlord for such costs upon demand. Tenant further agrees that except for instances of the gross negligence or willful misconduct of Landlord, Landlord shall not be liable for any damage to the person or property of Tenant, or any other person occupying, visiting or entering the Premises, sustained due to the disrepair of the Premises or any part thereof or any appurtenances thereof. Further, Landlord shall not be liable to Tenant for any damage to the person or property of Tenant sustained due to, arising out of, or caused by, the acts or omissions of Tenant or any third party.

**20.2    Dog Bite Liability Insurance.** If Landlord authorizes Tenant to keep a dog at the Premises, Tenant may be required to purchase and maintain dog bite liability insurance. If applicable, see the Pet Addendum for more information.

**20.3    Other Insurance.** Tenant shall maintain any other insurance required under this Lease or as may be required by Landlord to address liabilities arising from any specific use of the Premises by Tenant or any Tenant Parties.

**21.    WAIVER.** No failure of Landlord to enforce any provision of this Lease shall be deemed a waiver of that term or of any other term of this Lease. The waiver by Landlord of any provision of this Lease shall not be deemed to be a waiver of any subsequent breach of the same or any other provision of this Lease, nor shall any custom or practice which may arise between the parties be construed to waive or to lessen the right of Landlord to insist upon performance by Tenant of all the provisions of this Lease. The subsequent acceptance of Rent by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term of this Lease regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent. Landlord's acceptance of a partial payment of Rent shall not constitute a waiver of Landlord's right to the full amount due nor shall Landlord's acceptance of Rent paid late ever constitute a waiver of Landlord's right to evict Tenant for habitual late payment of Rent.

**22.    JOINT AND SEVERAL LIABILITY.** It is expressly understood that if this Lease is between Landlord and more than one Tenant, each Tenant shall be individually and jointly and severally liable for the performance of each and every part of this Lease. In particular, in the event of default by any one such Tenant, each and every remaining Tenant shall be responsible for timely payment of Rent, payment of any damages (however or whenever incurred) and the performance of all other provisions of this Lease, whether or not such Tenant continues in possession of the Premises.

**23.    TENANT'S DEFAULT.** *Sections 23 and 24 describe what events constitute a default and the remedies available to Landlord for a default. You should understand the consequences of a default and Landlord's rights and remedies in such case.* The occurrence of any of the following shall constitute a default by Tenant under this Lease:

**23.1    Obligation to Pay Rent.** Failure to pay Rent when due and payable; or

**23.2    Other Obligations.** Failure to perform any other obligation of Tenant under this Lease or comply with any provisions of this Lease, provided that Landlord shall provide Tenant a notice of default and the opportunity to cure such default within the time period that is the least of (a) five (5) days (unless a longer period is required by Applicable Laws), (b) the period afforded Landlord by a third party to cure a violation of Applicable Laws or homeowners association rules, or (c) the minimum period provided by Applicable Laws, except that in no case shall a cure period be given for incurable breaches.

**24.    LANDLORD'S REMEDIES.** Landlord shall have the following remedies if Tenant commits a default and does not cure such default within any applicable cure period. These remedies are not exclusive; they are cumulative in addition to any remedies now or later allowed by Applicable Laws.

**24.1    Landlord** may continue the Lease in full force and effect, and the Lease will continue in effect as long as Landlord does not terminate Tenant's right to possession, and Landlord shall have the right to collect Rent when due.

**24.2    Landlord** may terminate Tenant's right to possession of the Premises at any time upon twenty-four (24) hours advance written notice to Tenant of Tenant's default. No act by Landlord other than giving notice to Tenant in accordance with Applicable Laws shall terminate this Lease. Acts of maintenance, efforts to relet the Premises, or the appointment of a receiver on Landlord's initiative to protect Landlord's interest under this Lease shall not constitute a termination of Tenant's right to possession.

**24.3    Landlord,** at any time after Tenant commits a default, may cure the default at Tenant's cost. If Landlord at any time, by reason of Tenant's default, pays any sum or does any act that requires the payment of any sum, the sum paid by Landlord shall be due immediately from Tenant to Landlord and shall bear interest from the date the sum is paid by Landlord until Landlord is reimbursed by Tenant, at the lesser of (a) ten percent (10%) per annum or (b) the maximum rate permitted by Applicable Laws. The sum, together with interest on it, shall be treated as Additional Rent but shall not be considered as an increase in the Monthly Rent.

**24.4    All** legal and equitable remedies permitted by Applicable Laws, which includes filing an immediate dispossessory action. In any dispossessory action, and to the extent permitted by Applicable Laws, Tenant shall deposit any unpaid Rent with the governing court by money order or cashier's check. To the full extent permitted by Applicable Laws, Tenant shall be liable for Landlord's costs and expenses, including without limitation the cost of finding and processing a replacement Tenant, locator service fees, cleaning costs, make-ready costs, attorneys' fees, administrative fees and eviction fees.



Residential Lease Agreement (Georgia)

11



Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-460F-8688-2466E6427C84

**25.    EARLY MOVE-OUT**.  *Landlord has relied upon your commitment to lease the Premises for the entire Lease Term. Therefore, if you move out early, you will be in default and will be liable to the Landlord for damages and the payment of Rent for the time you agreed to stay in the Premises unless Landlord agrees to a negotiated termination fee.  However Landlord has no obligation to agree to a negotiated lease termination fee and may elect to pursue its remedies under this Lease for a default.*  If Tenant moves out early without Landlord's prior written consent, or without paying Landlord a negotiated lease termination fee, Tenant shall be liable to Landlord for actual damages, including liability for Rent during the entire remainder of the Lease Term (less mitigation) and other costs and expenses, including, without limitation, the cost of finding and processing a replacement Tenant, paying locator service fees, cleaning and make-ready costs.

**26.    ABANDONMENT**.  If Tenant removes or attempts to remove any property from the Premises other than in the usual course of continuing Tenant's occupancy of the Premises, without having first paid Landlord all moneys due under this Lease, the Premises may be considered abandoned, and Landlord shall have the right, without notice and at Tenant's expense, as Additional Rent, to store or dispose of any property left in the Premises by the Tenant in accordance with Applicable Laws.  A default under this Section shall constitute a default under **Section 23** and shall give rise to Landlord's remedies under **Section 24**.

**27.    TERMINATION OF TENANCY BY TENANT; TENANT'S OBLIGATIONS UPON VACATING PREMISES**.

**27.1    Termination by Tenant**.  *In anticipation of the expiration of the Lease, and upon termination of same, you will have certain obligations with respect to the Premises. This Section describes those obligations, which include the obligations to provide notice to the Landlord and to remove your personal property from the Premises.*  Within thirty (30) days prior to the Expiration Date or the expiration of the Lease, whether such Lease is a term or month-to-month tenancy, Tenant may terminate the rental of the Premises only by giving Landlord thirty (30) days advance written notice in the form of the Tenant's Notice of Intent to Move Out form provided by Landlord.  Rent shall be due and payable through the end of the notice period.  Tenant may rescind said notice within five (5) calendar days after it is delivered to Landlord without incurring liability to any person.  Such rescission must be in writing delivered to Landlord.  Thereafter, if Tenant fails to vacate the Premises on or before the date set forth in Tenant's notice, Tenant shall be liable for any costs incurred by Landlord or any third parties who relied on Tenant's notice terminating the tenancy. Tenant further agrees to indemnify, protect, defend and hold Landlord and the Landlord Parties harmless from any and all claims arising in any way out of Tenant's failure to comply with the provisions of Tenant's notice; Tenant's failure to pay any such sums within five (5) days after written demand shall be deemed a breach of this Lease.  Upon Landlord's receipt of Tenant's termination notice, Landlord may enter the Premises, upon reasonable notice to the Tenant, to show the Premises to prospective buyers or renters.

**27.2    Obligations of Tenant Upon Termination**.  Upon termination of this Lease, Tenant shall: (a) give Landlord all keys or access devices to the Premises, the Building or any common areas, providing, at a minimum, the number of keys and opening devices that were provided to Tenant on the Commencement Date; (b) vacate and surrender the Premises to Landlord in as good condition as received, normal wear and tear excepted; (c) vacate any/all parking and/or storage space; (d) clean and deliver the Premises to Landlord in the same condition as it was in on the Commencement Date, normal wear and tear excepted, including replacing all light bulbs as necessary and completing any "**Repairs**" as defined in **Section 27.4** below; (e) remove all debris; (f) given written notice to Landlord of Tenant's forwarding address; and (g) remove all personal property of Tenant.  Any personal property that is left in the Premises shall be handled in accordance with Applicable Laws and **Section 27.5** below.  Tenant acknowledges that burns, stains, holes or tears in the carpeting, draperies or walls do not constitute normal wear and tear.

**27.3    Alterations and Improvements**.  All Alterations made by or caused to be made by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may charge Tenant for restoration of the Premises to the condition it was in prior to any Alterations.  Under no circumstances shall Tenant be entitled to recover any amounts paid by the Tenant for said alterations/improvements, or otherwise be entitled to an offset of any monies due Landlord, for having undertaken any such Alterations.

**27.4    Move-Out Inspection**.  Tenant may request that Landlord complete an inspection of the Premises no earlier than two (2) weeks prior to Tenant vacating the Premises and at the time Tenant vacates the Premises. Tenant shall be given an opportunity to remedy identified deficiencies during any such inspection prior to Tenant vacating the Premises, consistent with the terms of this Lease.  Any repairs or alterations made to the Premises as a result of this inspection (collectively, "**Repairs**") shall be made at Tenant's expense. Repairs may be performed by Tenant or through others, who have adequate insurance and licenses and are approved by Landlord. The work shall comply with Applicable Laws, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Tenant shall: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Tenant and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination.  If Tenant fails or refuses to participate in either move-out inspection, Landlord's written inspection report(s) shall be conclusively presumed to be correct.

**27.5    Personal Property of Tenant**.  Upon vacating the Premises, Tenant shall remove all personal property from the Premises. If any personal property is left in the Premises, Landlord will provide Tenant, by first class mail, postage prepaid (to the subject premises unless another address has been provided by Tenant), the notice to reclaim abandoned property required by Applicable Laws. Abandoned property may be subject to a contractual lien to secure payment of past due Rent.  Landlord shall store and/or dispose of all personal property as required by Applicable Laws, provided that Landlord may charge Tenant for such costs and/or deduct such costs from the Security Deposit.

**27.6    Landlord's Signage Rights**.  Landlord may place signage in the front yard or any other reasonable location at the Premises (a) ninety (90) days prior to the end of the Lease Term, (b) upon receipt of Tenant's notice to terminate, and (c) at such other reasonable times as Landlord determines, to advertise the Premises to potential renters and/or buyers.

**28.    SURRENDER**.  Whenever Landlord is entitled to possession of the Premises under the terms of this Lease, and in accordance with Applicable Laws, Tenant shall immediately surrender the Premises to Landlord and remove all of Tenant's personal property from the Premises. Unless specifically permitted under the Lease, if Tenant remains in the Premises after termination or expiration of this Lease, Tenant shall be deemed a tenant at sufferance and Landlord shall have all remedies provided by Applicable Laws, including but not limited to the right to immediately increase in Rent and pursue an action for eviction.



Residential Lease Agreement (Georgia)

12



Tenant(s) Initials

**29.   PREMISES RULES.**  Tenant shall abide by any and all Premises Rules whether made known before or after the date of this Lease, including without limitation homeowners association rules, municipal codes, the Premises Rules and Regulations Addendum, and any rules provided to Tenant by Landlord for the Premises.

**30.   MILITARY PERSONNEL.**  Tenant may terminate this Lease prior to the Expiration Date if the Tenant is (a) a member of the U.S. Armed Forces or reserves on active duty or a member of the National Guard called to active duty for more than thirty (30) days in response to a national emergency declared by the President of the United States, or (b) receives orders for permanent change-of-station, receives orders to deploy with a military unit or as an individual in support of a military operation for ninety (90) days or more or is relieved or released from active duty.  Upon written notice from Tenant to Landlord of such event, this Lease will be terminated thirty (30) days after the date on which Tenant's next Monthly Rent is due.  Tenant shall be required to provide to Landlord a certified copy of such military orders that warrant termination of this Lease.  Military permission for base housing in the local area in which the Premises is a part of do not constitute a change-of-station hereunder.  After Tenant vacates the Premises, Landlord shall return the Security Deposit in accordance with this Lease.  For the purposes of this Lease, orders described in subsection (b) above will only release the Tenant who qualifies under subsections (a) and (b) above and receives the orders during the Lease Term and such Tenant's spouse or legal dependent living in the Tenant's household.  A co-tenant who is not Tenant's spouse or dependent cannot terminate under this Section.  Unless Tenant has stated otherwise in the additional terms provision of this Lease, Tenant represents at execution of this Lease that: (i) Tenant does not have deployment or change-of-station orders; (ii) Tenant will not be retiring from the military during the Lease Term; and (iii) the term of Tenant's enlistment or obligation will not end before the Lease Term.  Tenant shall be required to immediately notify Landlord if Tenant is called to active duty or receive deployment or permanent change-of-station orders.

**31.   NEIGHBORHOOD CONDITIONS.  *You should spend time getting to know the Neighborhood in which the Premises is located before you execute this Lease.  You should also take into account any matters that may be checked in Sections 32 through 35 below regarding the Premises.***  Landlord makes no representations or warranties as to the current or future character or condition of the area or neighborhood in which the Premises is located.  Further, Tenant acknowledges that Landlord is not representing or warranting that the Premises is safe or secure and is not guaranteeing the safety or security of any Tenant or Tenant Party.  Tenant is advised to satisfy himself/herself as to neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons or offenders, fire protection, other governmental services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and conditions of common areas, conditions and influences of significance to certain cultures or religions, and personal needs, requirements and preferences of Tenant.  If Tenant has a concern about whether or not a registered sex offender is living in the neighborhood or nearby vicinity in which the Premises is located, Tenant should take steps to review and confirm the same with the Georgia Sex Offender Registry, which is available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.

**32.**   If **Section 1.6** is checked, **CONDOMINIUM; PLANNED UNIT DEVELOPMENT.**  The Premises is a unit in a condominium, planned unit development, common interest subdivision or other development governed by a homeowners association(s).  Tenant agrees to comply with all such homeowners association(s) covenants, conditions and restrictions, articles, bylaws, rules and regulations and decisions in accordance with the Community Policies, Rules, and Regulations Addendum.  Tenant will take due care when using any of the areas or common areas of the Building, community or development, and shall not cause any damages to any such areas.  Tenant shall be liable to Landlord for the cost of repairing any damages to the Building, community or development, caused by Tenant, any Tenant Party, or Tenant's or any Tenant Party's pets, and for any fines, assessments, or other charges levied against Landlord.  Tenant shall promptly notify Landlord of any such damages to the Building, community or development, caused by the Tenant and/or any Tenant Party.

**33.   NOTICES.  *IT IS IMPORTANT TO FOLLOW THE NOTICE REQUIREMENTS.  WHILE WE LIVE IN AN AGE WHERE CELL PHONES AND TEXTING ARE PREVALENT, YOU WILL ALSO NEED TO FOLLOW THE NOTICE REQUIREMENTS.  ALL INFORMATION, ADVICE OR NOTICES THAT EITHER PARTY IS PERMITTED OR REQUIRED TO GIVE TO THE OTHER SHALL BE IN WRITING.  NO ORAL NOTICE OF ANY KIND MAY BE USED EXCEPT IN AN EMERGENCY.***

**33.1.**  In every instance where it shall be necessary or desirable for Landlord to serve any notice or demand upon Tenant, it shall be sufficient (1) to deliver or cause to be delivered to Tenant a written or printed notice, or (2) to send a written or printed notice by United States mail, addressed to Tenant at the Premises, in which event the notice or demand shall be deemed to have been served at the time the copy is mailed, or (3) to leave a written or printed copy thereof with a person 13 years of age or older, at the Premises, or (4) by electronic delivery as set forth in **Section 33.2**, or (5) in the event no one is in actual possession of the Premises, then by posting the same upon any door leading into the Premises, in which event the notice or demand shall be deemed to have been served at the time the copy is so left or affixed.  All notices required or desired to be sent by Tenant to Landlord shall be in writing, shall be signed by Tenant and shall be given either by (1) electronic delivery, or (2) personal delivery, or (3) by prepaid U.S. certified mail to Landlord or Landlord's agent for purposes of receiving notices, if any, identified in this Lease.

**33.2.**   Tenant agrees that all notices to be delivered to Tenant pursuant to **Section 33** may be delivered by Landlord to Tenant electronically to the following e-mail address(es):

For _Avery Egypt_____          _avery.egypt@gmail.com___
          Print Name                              E-mail Address

For _Charmyne Montfort_____          _charmynemontfort94@gmail.com__
          Print Name                              E-mail Address

For _____          _____
          Print Name                              E-mail Address

For _____          _____
          Print Name                              E-mail Address


Residential Lease Agreement (Georgia)

13

Tenant(s) Initials

DS  AE    DS  CM

DocuSign Envelope ID: B9CC9A2B-30A1-460F-8656-2456E6427C84

The date of sending of the electronic notice will be deemed the date of delivery. Tenant is responsible for notifying Landlord or Landlord's Agent, if applicable, of any change in Tenant's e-mail address. Any change of e-mail address will not be effective until five (5) days after receipt of notice thereof by Landlord.

34.   **ESTOPPEL CERTIFICATES**. Tenant shall execute and return a tenant estoppel certificate delivered to Tenant by Landlord or its Authorized Agent confirming there are no defaults by Landlord and other information reasonably requested by Landlord within five (5) days following receipt. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenant estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

**TENANT UNDERSTANDS AND AGREES THAT PERSONS TO WHOM THE ESTOPPEL CERTIFICATE MAY BE GIVEN WILL RELY ON THE INFORMATION PROVIDED BY TENANT.**

35.   **SUBORDINATION OF LEASE**. This Lease and Tenant's interest hereunder are and shall be subordinate, junior and inferior to any and all mortgages, liens or encumbrances now or hereafter placed on the Premises by Landlord, all advances made under any such mortgages, liens or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens or encumbrances.

36.   **REPRESENTATIONS**. *Landlord is relying upon the information you have provided to the Landlord. Please be sure this information is accurate. Failure of Tenant to provide accurate information may result in a default under this Lease and give Landlord certain rights and remedies for misrepresentations.* In leasing the Premises, Tenant represents and warrants that all statements in Tenant's rental application are complete and accurate. Any misrepresentation of any facts material to Landlord's decision whether to rent the Premises to Tenant or to permit a sub-tenant shall be considered a breach of this Lease and subject Tenant and any sub-tenant to eviction. Landlord requires all occupants 18 years of age or older and all emancipated minors to complete a lease rental application. Tenant acknowledges this requirement and agrees to notify Landlord when any occupant reaches the age of 18 or becomes an emancipated minor. Tenant authorizes Landlord to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Lease. Landlord may cancel this Lease: (a) before occupancy begins; (b) upon disapproval of the credit report(s); or (c) at any time, upon discovering that any information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of payment and other obligations under this Lease.

37.   **QUIET ENJOYMENT**. Tenant, upon payment of all Rent and other sums due under this Lease, and Tenant's performance of all of Tenant's obligations and agreements contained herein, shall and may peacefully and quietly have, hold and enjoy the Premises for the Lease Term.

38.   **GOVERNING LAW**. This Lease shall be governed, construed and interpreted by and in accordance with the laws of the State of Georgia.

39.   **SURVIVAL**. All indemnity obligations set forth in this Lease shall survive the early termination or expiration of this Lease.

40.   **TENANT CERTIFICATION OF NON-TERRORIST STATUS**. Tenant warrants that each individual Tenant is not acting directly or indirectly for or on behalf of any person, group, entity or nation named by any Executive Order or the US Treasury Department as a terrorist, a "Specially Designated National and Blocked Person," or any other banned or blocked individual or entity. Any violation of this Section shall constitute a default under **Section 23** and shall give rise to Landlord's remedies under **Section 24**.

41.   **ATTORNEYS' FEES**. If an action is brought for the recovery of Rent or other monies due under this Lease or by reason of a breach of any covenant contained in this Lease or for the recovery of the possession of the Premises, or to compel the performance of anything agreed to be performed by Tenant, or to recover for damages to the Premises, or to enjoin any act contrary to the provisions hereof, Tenant shall pay Landlord all the costs in connection herewith including, but not by way of limitation, reasonable attorneys' fees whether or not the action proceeds to judgment. Tenant is liable for pre-judgment interest at the highest rate allowed by Applicable Laws to any and all outstanding balances from the date of move out.

42.   **WAIVER OF JURY TRIAL**. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH PARTY KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO RECEIVE A JURY TRIAL IN CONNECTION WITH ANY ACTION OR LITIGATION IN ANY WAY ARISING OUT OF OR RELATING TO THIS LEASE.

43.   **SEVERABILITY**. To the extent that any term or provision of this Lease is illegal, invalid, or unenforceable under existing or future Applicable Laws, all remaining terms and provisions of this Lease shall not be affected and shall remain binding. Additionally, Landlord and Tenant hereby state their intention that this Lease include a term or provision that is legal, valid, and enforceable and that is as similar as reasonably practicable to such illegal, invalid, or unenforceable term or provision.

44.   **MISCELLANEOUS**. Time is of the essence to each and every provision contained in this Lease. All understandings between the parties are incorporated in this Lease. All terms and conditions are intended by the parties as a final, complete and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. Neither this Lease nor any provision in it may be extended, amended, modified, altered or changed except in writing. This Lease and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, of all of which shall constitute one and the same writing. The parties may execute this Lease by providing an electronic signature under the terms of the Electronic Signatures Act, 15 U.S.C. § 7001 et. seq., and this Lease may not be denied legal effect solely because it is in electronic form or permits the completion of the business transaction referenced herein electronically instead of in person. The covenants, obligations and conditions contained in this Lease shall be binding on and inure to the benefit of the heirs, legal representatives and assigns of the parties. Tenant's failure to initial any page or provision within this Lease shall not invalidate this Lease nor any provision included herein. To the extent permitted by Applicable Laws, Landlord shall be excused from any obligation under this Lease if performance of such obligation is impracticable due to an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or any other event that is beyond Landlord's control. The words "Landlord" and "Tenant" as used herein shall be construed to mean plural where necessary and the necessary grammatical changes required to make the provisions hereof apply to corporations or persons, women or men, shall in all cases be assumed as though in each case fully expressed. If Tenant has any questions regarding this Lease, Tenant should consult an attorney before signing this Lease.


Residential Lease Agreement (Georgia)

14

Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C84

**45.** **ADDITIONAL TERMS, CONDITIONS AND PROVISIONS.** There are no additional agreements between the parties unless specifically set forth in this Lease and this Lease sets forth the entire agreement between the parties except:

N/A

**46.** **ADDITIONAL ADDENDA, DISCLOSURES AND FORMS.** The following checked Addenda, disclosures and forms are hereby incorporated into this Lease as though fully set forth in full and are to be made a part of this Lease and all references herein to the Lease shall include all such Addenda. In the event that there are any conflicts between the terms and conditions of this Lease and such Addenda, disclosures and forms, the terms and conditions of the Addenda, disclosures and forms shall govern and control:

☒ Inventory and Premises Condition Form *(Provided at move-in inspection.)*
☒ Pet Addendum
☒ Premises Rules and Regulations Addendum
☒ Asbestos and Asbestos-Containing Materials Addendum
☒ Agreement to Receive the Lead-Based Paint Disclosure via the Tenant Portal Addendum
☒ Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards Addendum
☒ Mold Information and Prevention Addendum
☒ Crime Free Premises Addendum
☐ Community Policies, Rules and Regulations Addendum *(If required by HOA.)*
☐ Guaranty of Lease *(If applicable, Tenant shall cause the Guaranty of Lease to be executed by the guarantor(s) named therein and delivered to Landlord simultaneously with Tenant's execution and delivery of this Lease, or at such other time as required by Landlord.)*
☐ Utilities Addendum *(Only applicable for submetered properties.)*
☐ Additional Provision Addendum
☐ _____
☐ _____

By signing below Landlord and Tenant each affirm that he/she has read and agrees to be bound by each and every term of this Lease as of the date of this Lease as specified in **Section 1.**

**THIS LEASE SHALL NOT CONSTITUTE A BINDING CONTRACT TO LEASE THE PREMISES UNTIL IT IS APPROVED AND SIGNED BY LANDLORD AND A FULLY EXECUTED COPY OF THIS LEASE IS DELIVERED TO THE TENANT. THE UNDERSIGNED TENANT ACCEPTS THE FOREGOING OFFER AND AGREES TO LEASE THE PREMISES DESCRIBED IN THIS LEASE ON THE TERMS AND CONDITIONS SET FORTH IN THIS LEASE.**

**THIS LEASE CONTAINS A WAIVER OF JURY TRIAL PROVISION AND BY EXECUTING THIS LEASE TENANT AND LANDLORD ARE WAIVING ALL RIGHTS TO HAVE ANY DISPUTE ARISING OUT OF THIS LEASE TO BE HEARD BY A JURY.**

**PURSUANT TO SECTION 5.1, THIS LEASE SHALL BECOME MONTH-TO-MONTH AND THE MONTHLY RENT SHALL INCREASE BY $350.00 IF, UPON EXPIRATION OF THE INITIAL LEASE TERM, THE LEASE TERM HAS NOT OTHERWISE BEEN EXTENDED OR RENEWED IN WRITING.**

Landlord: Altisource Residential, L.P., a Delaware limited partnership

By: *Contrell Weathersby*
     ADCECDEF991E4E8...

Name: Contrell Weathersby

Title: Leasing agent    Date: 10/27/2017

Tenant:

Avery Egypt
Print Name

Signature: *Avery Egypt*
4D5FC44D505B403...    Date 7/3/2017

Charmyne Montfort
Print Name

Signature: *Charmyne*
3A9386FF38F742E...    Date 7/3/2017

_____
Print Name

_____
Signature    Date

_____
Print Name

_____
Signature    Date

7/3/2017



Residential Lease Agreement (Georgia)

Tenant(s) Initials



## RESIDENTIAL LEASE AGREEMENT ADDENDUM
### Pet

*You are required to disclose in your application all pets that will reside in the property. Maximum pets allowed is 3 and each pet will be approved on a case-by-case basis. Akitas, Akita Huskies, Alaskan Malamutes, Bull Mastiffs, Cane Corsos, Chows Chows, Chow Rottweilers, Dobermans, Doberman Pinschers, German Shepherds, Great Danes, Mastiffs, Pit Bulls, Pit Bull Terriers, Presa Canarios, Rhodesian Ridgebacks, Rottweilers, Siberian Huskies, St. Bernards, Staffordshire Terriers and Wolf-hybrids are not permitted on any Premises and we have the right to restrict other breeds or specific animals at our sole discretion.*

1. **DESCRIPTION OF PET**. This Addendum applies solely to the pet(s) described below (the "**Pet**"). The Pet is authorized at the Premises. All other animals are strictly prohibited from the Premises unless separately authorized by Landlord.

   | | | |
   |---|---|---|
   | Name of Pet: n/a | Age: | n/a |
   | Type: n/a | Breed: | n/a |
   | Color: n/a | Weight: | n/a |

   Issuer of License (if applicable): _____
   License No. (if applicable): _____

   | | | |
   |---|---|---|
   | Name of Pet: n/a | Age: | n/a |
   | Type: n/a | Breed: | n/a |
   | Color: n/a | Weight: | n/a |

   Issuer of License (if applicable): _____
   License No. (if applicable): _____

   | | | |
   |---|---|---|
   | Name of Pet: n/a | Age: | n/a |
   | Type: n/a | Breed: | n/a |
   | Color: n/a | Weight: | n/a |

   Issuer of License (if applicable): _____
   License No. (if applicable): _____

*Landlord will not collect a Pet Fee in the following jurisdictions: California, Delaware, Hawaii, Maryland, Massachusetts, Montana, New Hampshire, North Dakota, Oregon or any other jurisdictions that prohibit Pet Fees. Landlord will not charge a Pet Deposit, Pet Fee or Pet Rent, or request Dog Bite Liability Insurance for a Tenant or Tenant Parties' bona fide support or service animal. Tenant will, however, be liable for any damages that a support or service animal may cause.*

2. **PET DEPOSIT**. ☐ *(applicable if checked)* Tenant shall pay to Landlord a pet deposit in the amount of $___N/A___ (the "**Pet Deposit**"), due along with Tenant's submission of this form. The Pet Deposit shall be held in accordance with the Lease.

3. **PET FEE**. ☒ *(applicable if checked)* Tenant shall pay to Landlord a one-time **nonrefundable** pet fee of $200.00, (the "**Pet Fee**") due along with Tenant's submission of this form. This Pet Fee is not a deposit and is not a part of the Security Deposit.

4. **PET RENT**. ☐ *(applicable if checked)* Tenant shall pay to Landlord a Pet Rent of $___N/A___ per month (the "**Pet Rent**") to keep the Pet in the Residence. · The terms of the Lease applicable to the Monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Pet Rent.

5. **RULES**. If authorized, Tenant may keep the Pet at the Premises subject to the following terms and conditions:

   5.1. **Outdoors**. Tenant shall not allow the Pet outdoors unless (a) the outdoor area is enclosed by fence, wall, or otherwise such that the Pet cannot leave the area or (b) the Pet is on a leash or in a pet carrier and supervised by a responsible human companion. Tenant shall not leave the Pet unattended in an unenclosed outdoor areas at any time.

   5.2. **Other Tenants**. Tenant shall not allow the Pet to disturb neighbors or other Tenants. If Landlord receives legitimate and reasonable complaints from neighbors or other Tenants regarding the Pet, Landlord may determine that Tenant is in violation of the terms of this Addendum.

   5.3. **Waste**. Tenant shall promptly remove any Pet waste and clean the area, and shall be liable for any damages caused by such waste.

   5.4. **Care of Pet**. Tenant shall provide adequate food, water, and veterinary care for the Pet . Tenant shall not leave food or water outside the Residence that would attract pests or other nuisances. Tenant shall not leave the Pet unattended for an unreasonable period of time.

   5.5. **License and Vaccination**. Tenant shall have the Pet licensed, vaccinated, and/or medically treated as required by Applicable Laws. Upon Landlord's request, Tenant shall provide documentation evidencing compliance with Applicable Laws.

6. **TENANT LIABILITY**. To the full extent of the Applicable Laws, Tenant shall be responsible for and shall indemnify, protect, defend, and hold Landlord harmless for all Claims caused by the Pet including, but not limited to: damages to Landlord's property, the interior or exterior of the Premises, and other parts of the community in which the Premises is located; cleaning, defleaing, and deodorizing expenses which Landlord may arrange for upon move-out; claims for damages or injuries by third parties; and related attorneys' fees and legal expenses. If damages to property



Residential Lease Agreement (Georgia)

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

cannot be repaired, Tenant shall reimburse Landlord for the full costs of replacement. Tenant's liability is not limited to amounts collected under this Addendum.

7. **DOG BITE LIABILITY INSURANCE.** ☐ *(applicable if checked)* Tenant shall obtain and maintain a dog bite liability insurance policy with at least **$50,000 (or, if checked, ☐ $_____** ) in liability coverage in a form reasonably satisfactory to Landlord. Tenant's liability is not limited to the amount covered by such insurance policy. Landlord may demand proof of Tenant's dog bite insurance policy at any time during the Lease Term, starting thirty (30) days after the Commencement Date. Failure to provide adequate proof to Landlord, in Landlord's sole judgment, shall constitute a breach of the Lease.

8. **EMERGENCIES AND REMOVAL OF PET.** Unless prohibited by Applicable Laws, Landlord may, but shall not be required to, enter the Premises or assist the local animal control authority in entering the Residence if Landlord, in its sole discretion, reasonably believes that an emergency exists with respect to the Pet and Landlord is unable to contact Tenant with reasonable efforts. Upon entry, Landlord may remove the Pet and, at Tenant's expense, provide or secure boarding for the Pet, deliver the Pet to a local veterinarian for treatment, or deliver the Pet to the local animal control authority. Any costs or damages incurred by Landlord with respect to this Section 8 shall be due and payable by Tenant within ten (10) days of Landlord's written notice of such costs or damages.

9. **SPECIAL PROVISIONS.** The following special provisions take precedence over any conflicting provisions contained within this Addendum:

   N/A
   _____
   _____
   _____
   _____

10. **LANDLORD AUTHORIZATION.** By signing below, Landlord hereby authorizes Tenant to keep the Pet at the Premises until the Lease expires or is terminated, whichever occurs first. Landlord may terminate this authorization if Landlord, in its sole and absolute discretion, deems that the terms of this Addendum have been violated, and upon termination, Tenant shall permanently and immediately remove the Pet from the Premises.

**THIS ADDENDUM** is incorporated into and becomes part of the Residential Lease Agreement ("**Lease**") entered into between Tenant and Landlord for the Premises described in the Lease. Any capitalized term not herein defined shall have the same meaning as set forth in the Lease. The terms and conditions of this Addendum shall take precedence over any conflicting terms and conditions in the Lease.

| Landlord: Altisource Residential, L.P., a Delaware limited partnership | | Tenant: | | |
|---|---|---|---|---|
| By: | *Contrell Weathersby* (DocuSigned by) | Avery Egypt | *Avery Egypt* (DocuSigned by) | 7/3/2017 |
| | DC60F4DEB0C41E4EB... | Print Name | Signature | Date |
| Name: Contrell Weathersby | | Charmyne Montfort | *Charmyne M* (DocuSigned by) | 7/3/2017 |
| Title: Leasing agent     Date: 10/27/2017 | | Print Name | Signature   BA9386FF38F742E... | Date |
| | | Print Name | Signature | Date |
| | | Print Name | Signature | Date |

DocuSign Envelope ID: B9CC9A2B-30AF-460F-86B8-2456E6427C94

## RESIDENTIAL LEASE AGREEMENT ADDENDUM
### Premises Rules and Regulations

*Please carefully review these rules and regulations since they impose restrictions relating to your use of the Premises.*

1. **POOL/HOT TUB**. If the Premises has a pool or hot tub (both may be referred to herein as the "pool"), Tenant agrees to the following:

   1.1. **Assumption of Risk**. All swimmers swim at their own risk. Landlord is not responsible for accidents or injuries.

   1.2. **Swimming Alone**. No one should swim alone or use the hot tub alone.

   1.3. **Children**. Children must be accompanied at all times by a parent or legal guardian.

   1.4. **Safety Features**. Tenant shall not disable, modify, or tamper with any safety features present in the Premises, including but not limited to any fences, gates, locks, alarms, and drain covers. Tenant shall not prop open any fences or gates and shall ensure that all fences or gates are kept closed at all times. Tenant shall keep any fence or gate clear of climbable objects, trees, and shrubs. If any lifesaving equipment is provided by Landlord, Tenant shall only use such equipment in the event of an emergency. If the safety features appear to be damaged or malfunctioning, Tenant shall notify Landlord immediately.

   1.5. **Hot Tubs**. Tenant should check the temperature of the water before entering the pool or hot tub. Tenant should not heat the pool or hot tub above 100 degrees Fahrenheit. Pregnant women and young children should not use the hot tub. Persons with a history of heart disease, circulatory problems, diabetes or blood pressure problems, should consult a physician before using a hot tub.

   1.6. **Emergencies. IN CASE OF EMERGENCY DIAL 911**.

2. **FIRE HAZARDS**. Tenant shall comply with the following rules and regulations:

   2.1. **Fire Hazards Prohibited**. No person shall knowingly maintain a fire hazard.

   2.2. **Grills and Barbeques**. Grills, barbeques, and any other outdoor cooking or open flame devices will be used only on the ground level and will be placed a minimum of ten feet from any building or structure. Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or roofs, indoors, on balconies or patios, or in other locations vulnerable to fire.

   2.3. **Fireplaces**. Wood may be burned in wood burning fireplaces in the Premises only if approved for use by Landlord. Artificial logs may be burned in gas fireplaces in the Premises only if approved by Landlord. No other artificial substances, such as Duraflame® logs, are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.

   2.4. **Kerosene Heaters/Space Heaters**. The use of kerosene or fuel oil heaters within the Premises is expressly prohibited. Any electric space heaters used in the Premises shall be operated at all times in a safe manner, not left unattended, and equipped with safety features designed to prevent damage to person or property.

   2.5. **Flammable Liquids**. Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in dwellings, near exits, stairways, breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any apparatus or engine using flammable or combustible liquid as fuel.

   2.6. **Fines and Penalties**. Tenant is solely responsible for fines or penalties caused by Tenant's violation of local fire protection codes.

3. **REFUSE**. Tenant shall take reasonable precautions to avoid spilling or dropping waste in the Premises. Tenant shall place all refuse in designated containers and ensure that they are properly closed. Tenant shall participate in any recycling programs required by Applicable Laws.

4. **PEST CONTROL**. Tenant shall take all actions necessary to prevent insect, rodent or other infestation in or around the Premises.

5. **BUILDING INTERIOR**.

   5.1. **Walls**. Tenant shall not place nails, screws, or hangers in or on the walls or woodworks without Landlord's prior written consent, which consent may be withheld at Landlord's sole and absolute discretion.

   5.2. **Drapes and Shades**. Tenant shall not install drapes, shades, or other window coverings without Landlord's prior written consent. Any window coverings installed by Tenant shall be lined in white and present a uniform exterior.

   5.3. **Appliances**. The appliances delivered with the Premises are for the convenience of Tenant. Tenant acknowledges that appliances, through no fault of Landlord, may malfunction from time to time. Tenant shall be responsible for normal and routine maintenance on all appliances and shall return all appliances clean and in similar working condition as they were at the commencement date of the Lease, excepting normal wear and tear. Tenant shall not remove or discard appliances. If Tenant removes any appliances, it shall be considered theft and reported to the local authorities.

   5.4. **Plumbing**. Tenant shall not use toilets, drains, or other plumbing fixtures for any other purpose than for which they were constructed.

   5.5. **Toilets**. Tenant shall not throw sweepings, rubbish, rags, ashes, or other substances in any drains or toilets. If Tenant clogs any toilet, Tenant shall immediately contact a professional plumber at Tenant's expense to unclog such toilet, and Landlord shall not be obligated to pay such expense.



Residential Lease Agreement (Georgia)

1



Tenant(s) Initials

DocuSign Envelope ID: B9CC9A2B-30A1-480F-86B8-2456E6427C94

6. **BUILDING EXTERIOR**.

   6.1.   **Window and Door Screens**. There may or may not be screens for each window or door at the Premises. Screens may be installed in existing openings with Landlord's prior written consent. Landlord shall not maintain the screens. If the Premises does not have screens on the Commencement Date, screens shall not be provided by Landlord.

   6.2.   **Garbage Cans**. Garbage cans, brooms, mops, cardboard boxes, and similar articles shall be kept within the Premises.

   6.3.   **Awnings**. No awnings or other projections shall be attached to the outside of the building of which the Premises is a part without Landlord's prior written consent.

   6.4.   **Balconies and Patios**. Balconies and patios, if any, shall be kept neat and clean at all times. Tenant shall not store or hang rugs, towels, laundry, clothing, appliances, or other items on balconies or patios.

7.   **SPECIAL PROVISIONS**. The following special provisions take precedence over any conflicting provisions contained within this Addendum:

   N/A _____

_____

_____

**THIS ADDENDUM** is incorporated into and becomes part of the Residential Lease Agreement ("Lease") entered into between Tenant and Landlord for the Premises described in the Lease. Any capitalized term not herein defined shall have the same meaning as set forth in the Lease. The terms and conditions of this Addendum shall take precedence over any conflicting terms and conditions in the Lease.

**Landlord: Altisource Residential, L.P., a Delaware limited partnership**

By: _Contrell Weathersby_
     9DCFEDEBC61E4EB...

Name: Contrell Weathersby

Title: Leasing agent     Date: 10/27/2017

**Tenant:**

Avery Egypt       _Avery Egypt_     7/3/2017
Print Name      Signature 7DA66d59663...     Date

Charmyne Montfort      _Charmyne_     7/3/2017
Print Name      Signature BA9386FF38F742E...     Date

_____      _____     _____
Print Name      Signature     Date

_____      _____     _____
Print Name      Signature     Date

Residential Lease Agreement (Georgia)

**RESIDENTIAL LEASE AGREEMENT ADDENDUM**
**Asbestos and Asbestos-Containing Materials**

*Tenant should carefully review this Addendum regarding the potential presence of asbestos in the Premises.*

1.     **ASBESTOS.** In most houses built prior to 1983, and in some built thereafter, builders commonly used asbestos as a construction material. Asbestos is a generic term used to describe a group of naturally occurring, fibrous minerals or asbestos-containing materials ("**ACM**"). These minerals occur as bundles of strong, flexible fibers that are chemically inert, do not burn, and have good insulating properties. Because of these properties, ACM may have been used in the original construction, or in renovations of the Premises, prior to the enactment of federal laws that limit the use of asbestos.

2.     **ASBESTOS AT THE PREMISES.** Landlord has determined the following:

        ☐ (if checked) Landlord has knowledge that the Premises contains asbestos or ACM; or

        ☒ (if checked) Landlord has no knowledge that the Premises contains asbestos or ACM.

Landlord and Tenant acknowledge the foregoing by their initials below. Nothing set forth herein imposes on Landlord a duty to have investigated for the presence of asbestos or ACM in the Premises.

_CW_ Landlord    _AE_ Tenant    _CM_ Tenant    _____ Tenant    _____ Tenant

3.     **PROPERTIES OF ASBESTOS AND ACM.** Asbestos is classified as a known human carcinogen. The United States Environmental Protection Agency (EPA) has determined that the mere presence of asbestos or ACM is unlikely to pose a health risk so long as the ACM is not disturbed in a manner causing asbestos fibers to be released into the ambient air. Disturbances include sanding, scraping, pounding, or other techniques that produce dust and cause the asbestos particles to become airborne. The EPA does not require that intact ACM be removed. Instead, the law simply requires that individuals take reasonable precautions to minimize the chance of disturbing ACM.

4.     **DUTIES OF TENANT.** To the extent asbestos or ACM is present at the Premises, Tenant must follow the specific requirements identified herein. Asbestos or ACM which is sealed by paint, adhesives, building materials, tape or other means presents no threat unless the seal is somehow broken by an accident, remodeling, demolition or other activity. Consequently, properly sealed asbestos and ACM can be left in place if not disturbed. In accordance with the Lease provisions governing the quiet use, enjoyment, occupancy and alterations to the Premises, Tenant shall utilize best efforts to minimize the chance of damage or disturbance of such materials, to the extent (if any) that they may exist at the Premises. Tenant and Tenant Parties must not disturb or attach anything to the walls, ceilings, floor tiles, or insulation behind the walls or ceilings in the Premises unless specifically allowed by Landlord. In addition, Tenant and all Tenant Parties at the Premises shall not disturb, damage or upset the integrity of the building materials at the Premises. If such materials or ACM are disturbed or damaged (*e.g.*, acoustical ceiling accidentally scraped with a ladder), the Tenant must avoid unnecessary exposure to asbestos fibers and shall contact Landlord or the Premises property manager immediately so the situation can be properly assessed.

5.     **FURTHER INFORMATION AND RESOURCES.** There are legal resources that can provide further information on asbestos and ACM. The U.S. EPA provides numerous details and references: http://www2.epa.gov/asbestos.

**THIS ADDENDUM** is incorporated into and becomes part of the Residential Lease Agreement ("Lease") entered into between Tenant and Landlord for the Premises described in the Lease. Any capitalized term not herein defined shall have the same meaning as set forth in the Lease. The terms and conditions of this Addendum shall take precedence over any conflicting terms and conditions in the Lease.

| Landlord: Altisource Residential, L.P., a Delaware limited partnership | Tenant: | | |
|---|---|---|---|
| By: _Contrell Weathersby_ | Avery Egypt | _Avery Egypt_ | 7/3/2017 |
| | Print Name | Signature | Date |
| Name: Contrell Weathersby | Charmyne Montfort | _Charmyne_ | 7/3/2017 |
| Title: Leasing agent    Date: 10/27/2017 | Print Name | Signature | Date |
| | Print Name | Signature | Date |
| | Print Name | Signature | Date |

DocuSign Envelope ID: B8CC9A2B-30A7-460F-86BB-2456E6427C84

**RESIDENTIAL LEASE AGREEMENT ADDENDUM**
**Agreement to Receive the Lead-Based Paint Disclosure via the Tenant Portal**

Tenant hereby agrees to the electronic transfer of documents relating to any lead based disclosure via the Tenant Portal.  Tenant acknowledges receipt of (i) any (if applicable) lead based information and (ii) the pamphlet "Protect Your Family from Lead in Your Home" prior to the execution of the Lease in the Tenant Portal.

- Tenant Portal: http://www.rhssrentals.com/tenant-portal/
- The pamphlet "Protect Your Family from Lead in Your Home" is also available in multiple languages at the Environmental Protection Agency's website: http://www2.epa.gov/lead/protect-your-family-lead-your-home-real-estate-disclosure

| | | | | |
|---|---|---|---|---|
| **Landlord: Altisource Residential, L.P., a Delaware limited partnership** | | **Tenant:** | | |
| By: | _Contrell Weathersby_ | Avery Egypt | _Avery Egypt_ | 7/3/2017 |
| Name: | Contrell Weathersby | Print Name | Signature | Date |
| Title: | Leasing agent      Date: 10/27/2017 | Charmyne Montfort | _Charmyne M_ | 7/3/2017 |
| | | Print Name | Signature | Date |
| | | Print Name | Signature | Date |
| | | Print Name | Signature | Date |

**RESIDENTIAL LEASE AGREEMENT ADDENDUM**
**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

*This Addendum is a required disclosure. It is important that you carefully review this Addendum. If the Premises was constructed in **1978 or later**, Landlord and Tenant should initial **Section 1**. If the Premises was constructed **prior to 1978**, Landlord should complete **Section 3** and Tenant should initial **Section 0**. Real-estate agent should initial **Section 5**, if applicable.*

**1.**     **PREMISES CONSTRUCTION DATE.** If the Premises was constructed in 1978 or later, Landlord and Tenant acknowledge by his/her initials that this Addendum is not applicable and no further execution of this Addendum is required.

Landlord _____   Tenant _____   Tenant _____   Tenant _____

**2.**     **LEAD WARNING STATEMENT.** *Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 residence, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**3.**     **LANDLORD'S DISCLOSURE.**

   **3.1**     **Disclosure.** Presence of lead-based paint and/or lead-based paint hazards (*check one box below*):

   ☐ Known lead-based paint and/or lead-based paint hazards are present at the Premises (*explain*):
   _____.

   ☐ Landlord has no knowledge of lead-based paint and/or lead-based paint hazards at the Premises.

   **3.2**     **Records.** Records and reports available to the Landlord (*check one box below*):

   ☐ Landlord has provided the Tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards at the Premises (*list documents below*):
   _____.

   ☐ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards at the Premises.

**4.**     **TENANT'S ACKNOWLEDGEMENT.** The Tenant who initials this Section represents that he/she has received such materials on behalf of all Tenants under the Lease.

   _____ Tenant has received copies of all information listed above.

   _____ Tenant has received the U.S. EPA pamphlet "Protect Your Family from Lead in Your Home" (attached).

**5.**     **AGENT'S ACKNOWLEDGMENT.** (*initial*)

   _____ Agent has informed Landlord of Landlord's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**6.**     **CERTIFICATION OF ACCURACY.** The Landlord and Tenant have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**THIS ADDENDUM** is incorporated into and becomes part of the Residential Lease Agreement ("**Lease**") entered into between Tenant and Landlord for the Premises described in the Lease. Any capitalized term not herein defined shall have the same meaning as set forth in the Lease. The terms and conditions of this Addendum shall take precedence over any conflicting terms and conditions in the Lease.

Landlord: Altisource Residential, L.P., a Delaware limited partnership

By: _Contrell Weathersby_ (DocuSigned by)
Name: Contrell Weathersby
Title: Leasing agent      Date: 10/27/2017

Tenant:
Avery Egypt                     (DocuSigned by) _Avery Egypt_   7/3/2017
Print Name                      Signature                       Date 7/3/2017
Charmyne Montfort               _Charmyne_                       7/3/2017
Print Name                      Signature                       Date

Print Name                      Signature                       Date

Print Name                      Signature                       Date

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

### RESIDENTIAL LEASE AGREEMENT ADDENDUM
#### Mold Information and Prevention

*It is important that you carefully inspect the Premises for mold before the Commencement Date and identify any problems to Landlord. To minimize the likelihood of mold, it is important that you read and follow the requests and recommendations in this Addendum.*

1.   **NATURE OF MOLD GROWTH.**   Mold is a type of fungi that occurs naturally in the environment and is necessary for the natural decomposition of plant and other organic material. It spreads by means of sharing in microscopic spores borne on the wind, and is found everywhere life can be supported. Most people are familiar with mold growth in the form of bread mold, and mold that may grow on bathroom tile. Residential home construction is not, and cannot be, designed to exclude mold spores. If the growing conditions are right, mold can grow at the Premises. To grow, mold requires a food source. This might be supplied by items found in the home, such as fabric, carpet, wallpaper, or by building materials, such as drywall, wood, and insulation, among others. Also, mold growth requires a temperate climate. The best growth occurs at temperatures between 40ºF and 100ºF. Most importantly, mold growth requires moisture.

2.   **MOISTURE AND MOLD GROWTH.**   Moisture availability is the only mold growth factor that can be controlled in a residential setting. By minimizing moisture, Tenant can reduce or eliminate mold growth. Moisture in the home can have many causes. Spills, leaks, overflows, condensation, and high humidity are common sources of home moisture. Good housekeeping and home maintenance practices are essential in the effort to prevent or eliminate mold growth. If moisture is allowed to remain on the growth medium, mold can develop within twenty-four (24) to forty-eight (48) hours. If moisture sources are not removed or addressed, mold will continue to grow. All mold growth is not necessarily harmful, but mold has been linked with adverse health effects in susceptible persons. The most common effects are allergic reactions, including skin irritation, watery eyes, runny nose, coughing, sneezing, congestion, sore throat and headache. However, there are no specific mold cleanup levels or established numerical abatement standards for mold remediation. The most effective remedy for mold is to remove the source(s) of excess water or continuing moisture intrusion.

3.   **STEPS TO REDUCE MOLD GROWTH.**   Mold growth depends largely on how Tenant maintains the Premises. Tenant shall take action to prevent conditions that cause mold or moisture build-up, and minimize any effects that may be caused by mold growth, including the following actions:

- Before bringing items into the Premises, check for signs of mold on the items. For example, potted plants (roots and soil), furnishings, or stored clothing and bedding material, as well as many other household goods, could already contain mold growth.
- Regular vacuuming and cleaning will help reduce mold levels. Mild bleach solutions and most tile cleaners are effective in eliminating or preventing mold growth if used in accordance with the manufacturer's recommendations.
- Keep the humidity at the Premises low. Vent clothes dryers to the outdoors. Ventilate kitchens and bathrooms by opening the windows, by using exhaust fans, or by running the air conditioning to remove excess moisture in the air, and to facilitate evaporation of water from wet surfaces.
- Promptly clean up spills, condensation, and other sources of moisture. Thoroughly dry any wet surfaces or material. Do not let water pool or stand in your home. Promptly replace any materials that cannot be thoroughly dried, such as drywall or insulation.
- Inspect for leaks on a regular basis. Look for discolorations or wet spots. Repair any leaks promptly. Empty water from condensation pans (refrigerators and air conditioners). Take notice of musty odors or any visible signs of mold.
- Should mold develop, thoroughly clean the affected area. First, test to see if the affected material or surface is color safe. Porous materials, such as fabric, upholstery, or carpet should be discarded. Should the mold growth be substantial, contact Landlord for further direction on the use of services from a qualified mold abatement professional.

4.   **FURTHER INFORMATION AND RESOURCES.**   The U.S. EPA provides information and numerous resources regarding excess water, moisture intrusion and mold: http://www.epa.gov/mold/. The U.S. Centers for Disease Control and Prevention also provide details about mold growth and human health: http://www.cdc.gov/mold/.

5.   **DUTIES OF TENANT.**   Tenant agrees to assume responsibility for following the recommendations set forth in this Addendum. It is the responsibility of Tenant to take action to reduce or eliminate the occurrence of mold growth in the home. Tenant's failure to take preventative actions may reduce or preclude Landlord's responsibility for water damage or water intrusion. If there is any water damage or water intrusion to the Premises, Tenant shall take prompt action to prevent conditions that cause mold growth to develop. Tenant shall immediately notify Landlord of water intrusion and allow Landlord the opportunity to inspect the problem. Failure to notify Landlord of water intrusion or water damage shall be an affirmative defense to any Claims by Tenant arising from water damage or water intrusion.

6.   **LIMITATIONS ON LANDLORD LIABILITY.**   Tenant acknowledges and agrees that Landlord shall not be liable for any and all Claims with respect to the presence and/or existence of molds, mildew, and/or microscopic spores unless caused by the sole negligence or willful misconduct of Landlord. To the extent Landlord may be liable, if at all, Tenant, on behalf of itself, and any Tenant Parties, hereby indemnifies Landlord and Landlord's officers, directors, partners, members, affiliates, successors, and assigns from and against any and all Claims for property damage, injury, or death resulting from the exposure to microscopic spores, mold, fungi, and/or mildew and from any loss of resale value due to the presence and/or existence of mold, mildew and/or microscopic spores; provided, however, that in no event is Tenant indemnifying Landlord as a result of the presence and/or existence of mold, mildew, and/or microscopic spores if caused by the sole negligence or willful misconduct of Landlord.

**THIS ADDENDUM** is incorporated into and becomes part of the Residential Lease Agreement ("Lease") entered into between Tenant and Landlord for the Premises described in the Lease. Any capitalized term not herein defined shall have the same meaning as set forth in the Lease. The terms and conditions of this Addendum shall take precedence over any conflicting terms and conditions in the Lease.

| Landlord: Altisource Residential, L.P., a Delaware limited partnership | Tenant: |
|---|---|
| By: *Contrell Weathersby* | Avery Egypt |
| | Print Name |
| Name: Contrell Weathersby | Avery Egypt 7/3/2017 |
| | Signature / Date |
| Title: Leasing agent   Date: 10/27/2017 | Charmyne Montfort |
| | Print Name |
| | Charmyne Montfort 7/3/2017 |
| | Signature / Date |
| | Print Name |
| | Signature   Date |
| | Print Name |
| | Signature   Date |



Residential Lease Agreement (Georgia)

DocuSign Envelope ID: B9CC9A2B-30A1-460F-86B8-2456E6427C94

## RESIDENTIAL LEASE AGREEMENT ADDENDUM
### Crime Free Premises

*The Premises must only be used in a crime-free, drug-free manner, as described below and in the Lease.*

In addition to all of Tenant's obligations to comply with Applicable Laws in the use and occupancy of the Premises, Tenant agrees to the additional specific requirements set forth below:

1. **PROHIBITION OF CRIME**. Tenant and Tenant Parties , whether on or off the Premises, and Tenant Parties are prohibited from:

    1.1    Engaging in any criminal activity, including drug-related criminal activity, on or near the Premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, possession or possession with intent to manufacture, sell, distribute, or use an illegal or controlled substance (also as defined in Section 102 of the Controlled Substance Act [21 U.S.C. 802]).

    1.2    Engaging in any act intended to facilitate criminal activity on or near the Premises or permitting the Premises to be used for criminal activity, regardless of whether the individual engaging in such activity is a Tenant or Additional Occupant or a guest thereof.

    1.3    Engaging in the unlawful manufacturing, selling, using, storing, keeping or giving of an illegal or controlled substance at any locations, whether on or near the Premises.

    1.4    Engaging in any illegal activity, including, but not limited to: prostitution, criminal street gang activity, criminal threats, assault, battery, the unlawful discharge of a weapon, possession of stolen property, sexual offenses, and any breach of the Lease that otherwise jeopardizes the health, safety and welfare of Landlord, Landlord's agents, neighbors or other tenants, or involving imminent or actual property damage.

2. **VIOLATION CONSTITUTES A MATERIAL BREACH**. *VIOLATION OF ANY OF THE ABOVE PROVISIONS SHALL BE A MATERIAL AND IRREPARABLE VIOLATION OF THE LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF TENANCY.* A single violation of any of the provisions of this Addendum shall be deemed a serious, material and irreparable non-compliance under the Lease.

> Tenant acknowledges that a single violation shall be good cause for immediate termination of the Lease and Landlord shall have all remedies under the Lease and Applicable Laws, including without limitation an immediate and/or accelerated dispossessory action. Proof of such a violation shall not require a criminal conviction, but shall be based on an evaluation of the totality of the circumstances of the alleged violation to be determined in the Landlord's sole discretion.

3. **EVIDENCE OF VIOLATION**. Tenant hereby authorizes Landlord to use police-generated reports against Tenant for any such violation as reliable direct evidence, and/or as business records as a hearsay exception, in all eviction hearings.

4. **TENANT PARTIES**. Tenant also agrees to be responsible for all actions of all Tenant Parties, including anyone to whom Tenant or an Additional Occupant gives access or allows on the Premises, regardless of whether Tenant or Additional Occupant knew or should have known about any such actions.

**THIS ADDENDUM** is incorporated into and becomes part of the Residential Lease Agreement ("Lease") entered into between Tenant and Landlord for the Premises described in the Lease. Any capitalized term not herein defined shall have the same meaning as set forth in the Lease. The terms and conditions of this Addendum shall take precedence over any conflicting terms and conditions in the Lease.

Landlord: Altisource Residential L.P., a Delaware limited partnership

By: *Contrell Weathersby*

Name: Contrell Weathersby

Title: Leasing agent    Date: 10/27/2017

Tenant:
Avery Egypt
Print Name    Signature *Avery Egypt*    Date 7/3/2017

Charmyne Montfort
Print Name    Signature *Charmyne M*    Date 7/3/2017

_____    _____    _____
Print Name    Signature    Date

_____    _____    _____
Print Name    Signature    Date


Residential Lease Agreement (Georgia)

1

**ALTISOURCE RESIDENTIAL, L.P.**

**LEASE ADDENDUM: GEORGIA**

The Lease and Addendum shall be governed by and construed in accordance with the laws of the State of Georgia.

1. **EXISTING DAMAGE.** Tenant acknowledges that prior to Tenant's payment of the Security Deposit, Tenant has reviewed the Property Condition Report listing any existing damage to the Premises. Tenant represents that Tenant has reviewed the condition of the Premises, has reviewed the Property Condition Report for accuracy and has had the opportunity to countersign or dissent to the Property Condition Report. Tenant acknowledges that signing the Property Condition Report shall be conclusive evidence that the Premises is in good condition. If Tenant refuses to sign the Property Condition Report, Tenant shall state specifically in writing the items to which Tenant dissents. Unless damages or defects are noted on the Property Condition Report, the area of the Premises is presumed to be in an undamaged, clean, safe, and good working condition. Blank spaces mean there are no damages.

2. **SECURITY DEPOSIT.** "Security Deposit" shall have the meaning defined in Ga. Code § 44-7-30. Landlord shall deposit the Security Deposit into an escrow account established solely for the purpose of such escrow in any bank or lending institution governed by the laws of the State of Georgia or the United States; or, in the alternative, Landlord may comply with the surety bond requirements established in Ga. Code § 44-7-32. Landlord shall provide the escrow account information or surety account information below. Within three (3) days after the termination of occupancy under the Lease, Landlord or its agent shall inspect the Premises and compile a list of any damage done to the Premises, which shall be listed on the move-out portion of the Property Condition Report (including the estimated dollar value of such damage) and shall be the basis for any charge against the Security Deposit. Tenant shall have the right to inspect the Premises within five (5) business days after the termination of the occupancy under the Lease in order to ascertain the accuracy of the Property Condition Report. Landlord and Tenant shall sign underneath the move-out portion of the Property Condition Report, and this shall be conclusive evidence of the accuracy of the Property Condition Report. Upon Tenant's refusal to sign the Property Condition Report, Tenant shall state specifically in writing the items on the Property Condition Report to which Tenant dissents and Tenant shall sign such statement of dissent. If Tenant terminates occupancy without notifying the Landlord, Landlord may make a final inspection within a reasonable time after discovering the termination of occupancy.

TENANT'S FAILURE TO SIGN THE PROPERTY CONDITION REPORT OR TO SPECIFICALLY DISSENT TO THE PROPERTY CONDITION REPORT WHICH IS ATTACHED TO THIS ADDENDUM IN ACCORDANCE WITH THIS SECTION AND THE CODE MAY CAUSE TENANT TO FORFEIT TENANT'S RIGHT AVAILABLE UNDER GA. CODE § 44-7-33.

Landlord shall return the Security Deposit or the balance of the Security Deposit after deducting the damages along with a written statement itemizing and explaining such damages within thirty (30) days of the termination of Tenant's occupancy. Nothing in this Section precludes Landlord from retaining the Security Deposit for nonpayment of Rent or of fees for late payment, abandonment of the Premises, nonpayment of utility charges, repair work or cleaning contracted for by Tenant with third parties, unpaid pet fees or other fees or charges or for actual damages caused by Tenant's breach.

Any security deposit you paid is being held in a separate NON-INTEREST bearing account for your benefit in the following bank:

> Bank of America Merrill Lynch
> 2000 Clayton Rd.
> Concord, CA 94520

In the event interest is earned on the security deposit, Landlord may keep the interest.

3. **CONTACT INFORMATION.** Pursuant to Ga. Code § 44-7-3, the person authorized to manage the Premises is as follows

LANDLORD'S INITIALS _____    _____ TENANT'S INITIALS    _____ TENANT'S INITIALS

_____ TENANT'S INITIALS    _____ TENANT'S INITIALS

DocuSign Envelope ID: B9CC9A2B-36A1-480F-86B8-2498E6427C94

Altisource Residential, L.P.
Attn: Leasing Operations Manager, Rental Property Management
P.O. Box 105460
Atlanta, GA  30348
Phone: 855-662-8988
Fax: 855-273-1048

The owner of record of the premises or a person authorized to act for and on behalf of the owner for the purposes of serving of process and receiving and receipting for demands and notice is as follows:

C T Corporation System
Attn: Altisource Single Family, Inc.
1201 Peachtree Street, NE
Atlanta, GA  30361
Phone: 404-888-6488

4.  **CONFLICT**.  In the event of a conflict between the provisions of this Lease Addendum and the Lease, the provisions of the Lease Addendum will prevail.  Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to such terms in the Lease.

IN WITNESS HEREOF, this Addendum is executed as of the Effective Date.

LANDLORD:                                             TENANT:

**Altisource Residential, L.P.**, a Delaware limited partnership

By: _____             _____
        Contrell Weathersby                                              Avery Egypt
        Signature                                                              Signature

Print Name: ____Contrell Weathersby____        Print Name: __Avery Egypt__

Title: ____Leasing agent____                           _____
                                                                          Charmyne M
Date: ____10/27/2017____                                Signature

                                                                  Print Name: __Charmyne Montfort__

                                                                  _____
                                                                                  Signature

                                                                  Print Name: _____

                                                                  _____
                                                                                  Signature

                                                                  Print Name: _____

                                                                  Date: ____7/3/2017____